UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                                Case No. 8:22-bk-00103-CED

Senior Care Living VII, LLC,                              Chapter 11

    Debtor.
_____/

**OBJECTION OF UMB BANK, N.A. TO DEBTOR'S
MOTION TO USE CASH COLLATERAL**

UMB Bank, N.A., in its capacity as successor bond trustee (the "Bond Trustee") and successor master trustee (the "Master Trustee", and together with the Bond Trustee, the "Trustee") for the Bonds (as defined herein), objects (this "Objection") to the *Motion for Authority to Use Cash Collateral* (Doc. No. 6) (the "Cash Collateral Motion") filed by Senior Care Living VII, LLC (the "Debtor") or "SCL"), and states as follows:[1]

**RELEVANT BACKGROUND**

1.      In 2016, the Woodloch Health Facilities Development Corporation (the "Issuer") issued its Senior Housing Revenue Bonds (Inspired Living at Lewisville Project) Series 2016 (the "Bonds") in the aggregate principal amount of $45,385,000 pursuant to that certain Trust Indenture and Security Agreement between the Issuer and Branch Banking and Trust Company ("BB&T"), as predecessor to the Trustee, dated as of November 1, 2016 (the "Bond Indenture").  The proceeds of the Bonds were loaned by the Issuer to the Debtor pursuant to that certain Loan Agreement dated November 1, 2016 (the "Loan Agreement") for the purpose of, among other things, financing the Debtor's acquisition and construction of a senior living facility known as Inspired Living at

---

[1] Unless otherwise defined herein, all capitalized words have the meaning ascribed to such words as in the Cash Collateral Motion.

Lewisville, located in Lewisville, Texas (the "Project" or the "Facility"). Pursuant to that certain Master Trust Indenture, Deed of Trust and Security Agreement between SCL and BB&T, as predecessor to the Trustee, dated as of November 1, 2016 (the "Master Indenture"), SCL executed, and delivered to the Issuer, four promissory notes in the amounts of the Bonds (collectively, the "Obligations").

2. As security for its obligations owing on the Bonds, including with respect to the Obligations, the Master Indenture grants the Trustee a first priority security interest in substantially all of the Debtor's assets. The Bonds are further secured by, *inter alia*, (i) that certain Multiple Indebtedness Deed of Trust, and Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Deed of Trust"), and (ii) that certain Guaranty Agreement executed by the Debtor's principal, Mark Bouldin, dated as of November 1, 2016 (the "Bouldin Guaranty"). The Bond Indenture, the Loan Agreement, the Master Indenture, the Deed of Trust, the Bouldin Guaranty, and all other documents evidencing and/or securing the Bonds are collectively referred to herein as the "Bond Documents".

3. On October 4, 2019, the Trustee served a Default and Acceleration Notice (the "Default Notice") on the Debtor stating that an Event of Default had occurred and was continuing under the Bond Documents due to the Debtor's (i) failure to make its payment obligations to the Trustee under the Bond Documents, (ii) failure to pay property taxes when due, and (iii) failure to pay certain other obligations that resulted in the imposition of asserted liens against the Property. The Default Notice further stated that the Trustee was exercising its rights under the Bond Documents to accelerate the Debtor's payment obligations and declared the entire outstanding principal amount due on the Bonds, *i.e.* $45,385,000, to be immediately due and payable, and that "all such Obligations [were] accelerated, effective immediately." Over the course of the following

two years, the Trustee engaged in extensive negotiations with the Debtor in an attempt to resolve the defaults described in the Default Note, as well as under the Bouldin Guaranty. During that time, the Trustee supported the Debtor's efforts to improve its operations and provide the Debtor with the opportunity to resolve the outstanding defaults.

4. Nonetheless, over three months ago, the Trustee—without any objection from the Debtor—obtained an order from the District Court of Denton County, Texas, 431st Judicial District (the "Receivership Court") appointing J. Robert Medlin (the "Receiver") as receiver for all of the Debtor's assets (the "Receivership Order"). Since that time, the Receiver, with the assistance of RBC Capital Markets, LLC ("RBC") and Meridian Capital ("Meridian"), and with the support of the Trustee, has implemented and pursued a sale process for the "Facility" and other "Collateral Assets" as expressly contemplated by, and in compliance with, the detailed "Sale Process" set forth in the Receivership Order (as such terms are defined in the Receivership Order).

5. The Debtor states that it believes that if the assets are "sold in the current distressed environment, [it] does not believe that the bondholders will be paid in full." *Debtor's Chapter 11 Case Management Summary* (Doc. No. 5) (the "Debtor's Summary"), p. 2. Based on the Debtor's estimates, the value for the Facility and the Collateral Assets, "[a]ssuming a non-distressed environment," is "approximately $38 million." *Cash Collateral Motion*, ¶ 8.

6. The Trustee's claim against the Debtor, however, is $54,060,936.15 as of the Petition Date. Thus, based the Debtor's highest estimates of its own assets, the estate is still "underwater" and entirely insolvent.

7. Notably, other than the Trustee's $54 million claim, the Debtor's other outstanding debt obligations as of the Petition Date relate to unpaid taxes and subordinated payment obligations owed to the Debtor's manager. The Debtor has no outstanding payments owed to trade creditors.

Essentially, this bankruptcy case was filed to evade the Receivership Order and to avoid the Bouldin Guaranty.

8.     As set forth more fully in the Trustee's motion requesting that the Receiver be permitted to continue the Sale Process and the affidavits in support of the same filed contemporaneously herewith (the "<u>Abstention Motion</u>"), the Trustee is fully supportive of the Receiver, the Sale Process, and the oversight of the Receivership Court. The Trustee, as representative of the holders of the Bonds, holds the largest claim against the Debtor, which, as found by the Receivership Court, is secured by substantially all of the Debtor's assets (the "<u>Collateral Assets</u>"). Indeed, the Trustee's claim, *i.e.* $54,060,936.15, far exceeds the Debtor's own estimated value of the Collateral Assets, *i.e.* $38 million. Unfortunately, the Debtor's commencement of this bankruptcy has created confusion and misapprehension among the current bidders, and thus jeopardizes the Receiver's sale efforts and may depress the value of the sale. The diminution of the Collateral Assets can be avoided by permitting the Receiver to continue the sale as planned. As of the Petition Date, the Receiver obtained eight (8) letters of intent from potential Bidders and subsequently received seven (7) revised offers in a process competing for the stalking horse role.

9.     Without the Receiver's continued efforts, the Debtor's value will continue to deteriorate during the pendency of this case. In particular, the Debtor's tax obligations—because they are over-secured—continue to accrue post-petition thereby causing an unnecessary diminution in value to the collateral securing the Debtor's Obligations. *See* 11 U.S.C. § 506(b). Put simply, this Bankruptcy Case will not create value and may even further depress the value of the Debtor.

10. Moreover, the proposed Budget appended to the Cash Collateral Motion is woefully incomplete and fails to include (i) any adequate protection payments to the Bond Trustee given the continuing deterioration in the value of its collateral, or (ii) any interest payments on account of the Debtor's pre-petition secured tax obligations.

11. The Cash Collateral Motion should be denied based upon the issues presented in the Abstention Motion and because (i) the Debtor has failed to provide the Trustee with adequate protection as required under section 363 of the Bankruptcy Code and (ii) the potential cash burn caused by this bankruptcy case is completely unwarranted and will cause an unnecessary and substantial decrease in the value of the collateral securing the Debtor's Obligations.

## I.  ARGUMENT

12. Under Section 363(c)(2) of the Bankruptcy Code, the Debtor is prohibited from using cash collateral "unless – (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Section 363(e), in turn, requires "adequate protection" of the secured creditor's interest in the cash collateral to the extent that the Debtor is permitted to use cash collateral without the consent of its secured creditor. *See* 11 U.S.C. § 363(e) (requiring a bankruptcy court to "prohibit or condition such use . . . as is necessary to provide adequate protection of such interest"); *see also Marathon Petroleum Co, LLC v. Cohen (In re Delco Oil, Inc.)*, 599 F.3d 1255, 1258 (11th Cir. 2010) (noting that, in absence of adequate protection, the "unhindered use of cash collateral, i.e., 'secured 'property' may result in the dissipation of the estate"). The terms of 11 U.S.C. §363(e) are mandatory. 3 COLLIER ON BANKRUPTCY ¶ 363.05[2], 363-39 (16th ed. 2021); *see also, In re Chateaguay Corp.*, 94 F.3d 772, 775 (2nd Cir. 1996). As a

result, if the Trustee's interest in cash collateral is to be used by the Debtor, then the Trustee is entitled to adequate protection.

13. Although the Bankruptcy Code does not define adequate protection, section 361 of the Bankruptcy Code states that it is intended to protect a secured creditor against a decrease in the value of its collateral resulting from the imposition of the automatic stay under section 362(a) of the Bankruptcy Code or the use, sale, or lease of such collateral, including, without limitation, cash collateral. 11 U.S.C. § 361. Further, under sections 503(b) and 507(b) of the Bankruptcy Code, secured lenders are entitled to an administrative claim for any failure of adequate protection, including without limitation, in connection with any adequate protection lien. 11 U.S.C. §§ 503(b), 507(b).

14. When considering the non-consensual use of cash collateral, the "guiding inquiry is whether [the creditor's] security interests are 'adequately protected' absent the additional protection the cash collateral would provide. . . . In determining whether a creditor's secured interests are so protected, there must be an individual determination of the value of that interest and whether a proposed use of cash collateral threatens that value." *In re George Ruggiere Chrysler-Plymouth*, 727 F.2d 1017, 1019-20 (11th Cir. 1984); *see also, In re Martin*, 761 F.2d 472, 476-77 (8th Cir. 1985) (observing that "[i]n any given case, the bankruptcy court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risks to secured creditor's value resulting from the debtor's request of the use of cash collateral, (3) determine whether the debtor's adequate protection proposal protects value as nearly as possible against risk to value consistent with the concept of indubitable equivalence."). "Although the concept of adequate protection is a flexible one, it encompasses the basic constitutional requirement that a creditor's interest in property cannot be in any respect impaired or subjected to increased risk

without assurance that the creditor will realize the benefit of its bargain." *In re Magnus*, 50 B.R. 241, 243 (Bankr. D.N.D. 1985).

15. If a dispute arises as to the sufficiency of the proposed protection, the debtor bears the burden of proof on the issue of whether the creditor's interest is adequately protected. *See* 11 U.S.C. § 363(p)(1) (providing that "the [debtor in possession] has the burden of proof on the issue of adequate protection."). Here, the Debtor has not and cannot carry its burden.

16. The Debtor has no means to provide adequate protection to the Trustee and cannot satisfy section 363(e) of the Bankruptcy Code. Without adequate protection or an agreement with the Trustee, the Debtor is not entitled to any use of cash collateral as a matter of law. The Court should therefore deny the Cash Collateral Motion.

17. The proposed budget attached to the Cash Collateral Motion will only exacerbate the diminution in value of the Trustee's collateral. The budget includes no adequate protection payments given the diminution in the value of the Trustee's collateral and no payments (or very little) on account of the administration of this case—which thereby increases the insolvency of this Debtor. Moreover, the budget fails to include any capital expenditures to preserve the existing value of the Debtor's estate.

18. Accordingly, the Trustee objects to the Debtor's proposed use of Cash Collateral. As set forth in the Trustee's Abstention Motion, the Receiver should retain control over the assets of the Debtor including the cash collateral and thus the Debtor's requested of cash collateral should be denied. Alternatively, if the Court is amenable to allowing the Debtor to control its assets including the cash collateral, the Debtor's Motion should only be granted on an interim basis pending a resolution of the various issues in these proceeding but only to the extent that (a) the Budget provides for adequate protection cash payments to the Trustee and (b) an appropriate order

is entered containing customary provisions routinely included within such orders and other forms of adequate protection, including, but not limited to the following:

   a. <u>Adequate Protection Liens</u>. As adequate protection for any diminution in the value of the Collateral Assets, the Trustee requests a valid, binding, enforceable and perfected additional and replacement mortgages, pledges, liens and security interests in all post-petition collateral and the proceeds, rents, products and profits therefrom, whether acquired or arising before or after the Petition Date, to the same extent, priority and validity that existed as of the Petition Date;

   b. <u>Supplemental Liens</u>. As additional adequate protection solely to the extent of diminution, the Trustee requests a valid, perfected and enforceable continuing supplemental lien on, and security interest in, all of the assets of the Debtor of any kind or nature whatsoever within the meaning of section 541 of the Bankruptcy Code, whether acquired or arising before or after the Petition Date, and the proceeds, rents, products and profits therefrom;

   c. <u>Pre-Petition Superpriority Claim</u>. As additional adequate protection for any diminution in value of its collateral, the Trustee requests a superpriority expense claim allowed under section 507(b) of the Bankruptcy Code (the "<u>Pre-Petition Superpriority Claim</u>") against all assets of the Debtor's estate. The Pre-Petition Superpriority Claim shall have priority over any and all other unpaid administrative expenses now existing or hereafter arising, of any kind whatsoever, of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee or any creditor in this bankruptcy case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment;

   d. <u>Budget</u>. The Trustee requests that the Debtor be required to comply with, and shall use cash, including Cash Collateral, solely in accordance with a weekly budget that takes into account the adequate protection, tax payments and other required payments as set forth in such budget prepared by the Debtor in after consultation with the Trustee and as approved by the Court; and

   e. <u>Financial Reports</u>. The Trustee requests that the Debtor be required to provide the Trustee with all reports, documents and other materials, including financial reports and such other and further access to the Debtor's books and records, advisors and professionals as may be reasonably requested by the Trustee from time to time.

19. In the event that the Debtor's cannot provide the foregoing, the Cash Collateral Motion should be denied.

20. The Trustee reserves the right to assert other objections prior to, or at, the hearing on the Cash Collateral Motion.

WHEREFORE, the Trustee respectfully requests that the Court: (i) deny the Cash Collateral Motion in its current form; (ii) condition the use of Cash Collateral to comply with the objections raised herein; and (ii) grant the Trustee such other relief that this Court deems just and proper.

Date: January 14, 2022

**SHUTTS & BOWEN LLP**

*/s/ Ryan C. Reinert*
Ryan C. Reinert
Florida Bar No. 81989
Bridget M. Dennis
Florida Bar No. 1024897
4301 W. Boy Scout Blvd., Suite 300
Tampa, Florida 33607
Email: rreinert@shutts.com
        bdennis@shutts.com

-and-

**MINTZ, LEVIN, COHN, FERRIS GLOVSKY AND POPEO, P.C.**

Daniel S. Bleck (*pro hac vice* pending)
Timothy J. McKeon (*pro hac vice* pending)
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Email: DSBleck@mintz.com
        TJMcKeon@mintz.com

*Attorneys for the Trustee*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 14, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the Bankruptcy Court via the CM/ECF system, which electronically served a copy on all counsel of record, with a copy via U.S. Mail on January 15, 2022 to Senior Care Living VII, LLC, 3665 East Bay Drive, Ste. 204-429, Largo, FL 33771.

*/s/ Ryan C. Reinert*
Attorney