UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

IN RE:

SENIOR CARE LIVING VII, LLC,                CASE NO. 8:22-bk-00103-CED
                                            Chapter 11

        Debtor.                             **NOTICE OF HEARING FOR**
                                            **June 2, 2022, at 2:00 p.m.**

_____/

### DEBTOR'S MOTION FOR ORDER
### APPROVING COMPROMISE WITH UMB BANK, N.A., AS TRUSTEE

---

**NOTICE OF OPPORTUNITY TO OBJECT AND NOTICE OF HEARING
FOR JUNE 2, 2022, AT 2:00 P.M.**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at 801 North Florida Avenue, Suite 555, Tampa, Florida 33602 and mail a copy to the moving party's attorney at Michael C. Markham, Esq., Johnson Pope Bokor Ruppel & Burns, LLP, 401 E. Jackson Street, Suite 3100, Tampa, Florida 33602, on or before **May 27, 2022**.

If you file and serve a response within the time permitted, the Court will hear such objection on **June 2, 2022 at 2:00 p.m.** If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in this Motion.

**You should read these papers carefully and discuss them with your attorney if you have one.**

---

The Debtor, Senior Care Living VII, LLC, by and through its undersigned attorneys, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), moves this Court to enter a final order approving a compromise between with UMB Bank, N.A., in its capacity as bond trustee and master trustee (the "Bond Trustee") and in support of this Motion, the Debtor states as follows:

**Jurisdiction and Venue**

1.     This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. Sections 157 and 1334.  The subject matter of the Motion is a core proceeding pursuant to 28 U.S.C. Section 157(b).  Venue is proper in this district pursuant to 28 U.S.C. Section 1408.

2.     The statutory predicates for the relief requested herein are 11 U.S.C. §105(a), Rule 9019 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 9019-1.

**Background**

3.     On January 10, 2022 (the "Petition Date"), the Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

4.     The Debtor owns an assisted living facility ("ALF") in Lewisville, Texas, that is operated by its management company, Validus Senior Living ("Validus").  The Debtor also owns an approximate 4-acre parcel of unimproved real estate adjacent to the ALF (the "Excess Real Estate").

5.     Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor is operating as a Debtor-in-Possession and managing its ALF through Validus.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C., Sections 1334 and 157.  This is a core matter.

6.     An Official Committee of Unsecured Creditors has not been appointed as of the filing of this Motion.

7.     The Bond Trustee serves as successor bond trustee and successor master trustee for the Senior Housing Revenue Bonds (Inspired Living at Lewisville Project) Series 2016 (the "Bonds"), which were issued in 2016 in the aggregate principal amount of $45,385,000 for the benefit of the Debtor. The Bonds were issued pursuant to and secured by a (i) Trust Indenture and

Security Agreement dated as of November 1, 2016 (the "Bond Indenture"), (ii) Loan Agreement dated November 1, 2016 (the "Loan Agreement"), and (iii) Master Trust Indenture, Deed of Trust and Security Agreement dated as of November 1, 2016 (the "Master Indenture" and collectively with the Bond Indenture, the Loan Agreement and all other documents that evidence or secure the Bonds, the "Bond Documents"). As of the Petition Date, the Debtor owes a secured debt to the Bond Trustee in the principal amount of approximately $45,385,000.00 in connection with the Bonds and the Bond Documents. It appears that the Bond Trustee has a first priority, valid and property perfected lien on all of the Debtor's personal property, including receivables, by virtue of a UCC-1 financing statement recorded on November 28, 2016, in the Florida Secured Transactions Registry. The Bond Trustee filed a proof of claim in this case in the amount of $54,060,936.15 (Claim No. 4), including both the Series A notes and the Series B note.

8.      During this case, the Debtor sought and obtained authority to employ SC&H Capital, as financial advisor, to assist the Debtor, among other things, in procuring alternative financing for the Debtor. Since its employment, SC&H has been working diligently with the Debtor to procure financing and has made contact with over 100 potential lenders.

9.      The Debtor has executed a Term Sheet for debtor-in-possession financing that will be used to fund a compromise with the Bond Trustee and resolve all issues relating to the bond debt.

## **Proposed Settlement**

10.      The Debtor and the Bond Trustee (at the direction of the holders of a majority of the principal amount of the Bonds) have entered into a Settlement Agreement, a copy of which is attached hereto as **Exhibit A**. In short, the Bond Trustee has agreed to accept $36 million,

including the remaining balance of the debt service reserve fund, in full and complete satisfaction of all claims arising under the Bonds.

## Law and Argument

16.    Bankruptcy Rule 9019(a) grants the Court authority to approve post-petition settlements of claims and controversies. Under this authority, bankruptcy courts consider the overall wisdom of compromising and settling disputes arising in bankruptcy cases. *See, e.g., In re Air Safety Developmental, L.C.*, 336 B.R. 843 (S.D. Fla. 2005); *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (*citing Protective Comm. for Indep. Stockholders of TM Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968)). In reviewing a proposed settlement, the Court's ultimate inquiry should be "whether the proposed settlement is fair and equitable." *In re Air Safety Developmental, L.C.*, 336 B.R. at 843 (*citing In re Gallagher*, 283 B.R. 342, 246 (Bankr. M.D. Fla. 2002) (*citing Protective Comm.*, 390 U.S. at 424)). Ultimately, the question is not whether a better settlement might have been achieved or a better result reached if litigation pursued. Instead, the court should approve settlements that meet a minimal threshold of reasonableness. *See e.g., In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993) ("This Court has broad discretion to approve a settlement or compromise, and it should do so unless the proposed settlement falls below the lowest point in the range of reasonableness.").

17.    The Bankruptcy Court may approve not only settlement of pending lawsuits, but also settlements of controversies affecting the estate.  Settlements allow the estate to avoid risks and expenses associated with litigation.  *See In re Winn Dixie,* 356 B.R. at 250 (Bankr. M.D. Fla 2006) ("if this case were to proceed to litigation… the protracted litigation could wipe out the bankruptcy estate").

18.    The Eleventh Circuit has set forth standards for Bankruptcy Courts to apply in

analyzing proposed settlements:

> When a bankruptcy court decides whether to approve or disapprove of a proposed settlement, it must consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of creditors and a proper deference to their reasonable view in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)* 898 F.2d 1544 (11th Cir. 1990), cert. denied, 498 U.S. 959 (1990). In considering these factors, the ultimate question is whether the proposed compromise is fair and equitable and in the best interests of the bankruptcy estate. *See in re Winn Dixie,* 356 F.R. at 251 (overruling certain objections to a proposed compromise and concluding that the settlement was in the best interest of the debtors' estates); *Gallagher,* 283 B.R. at 346 ("[T]he bankruptcy court must determine whether the proposed compromise is fair and equitable and in the best interests of the bankruptcy estate.")

19.     This Court has broad discretion to approve a compromise and, it should do so unless the proposed settlement "falls below the lowest point in the range of reasonableness.: *In re Bicoastal Corporation*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993) (citing *In re W.T. Grant Co.,* 699 F.2d 599 (2d Cir. 1983), Cert. denied, 464 U.S. 822 (1983)).

20.     Rule 9019(a) provides that, after notice and a hearing, a Court may approve a proposed settlement of a claim. The decision of whether or not to approve a compromise is within the sound discretion of the Court. *In re Chira,* 367 B.R. 888, 896 (S.D. Fla. 2007) *aff'd* 567 F.3d 1307 (11th Cir. 2010) (citing *In re Air Safety Intern., L.C.,* 336 B.R. 843, 852 (S.D. Fla. 2005)); *In re Arrow Air, Inc.,* 85 B.R. 886 (Bankr. D.S. Fla. 1988).

21.     Bankruptcy Rule 9019(a) grants the Court authority to approve post-petition settlement of claims and controversies. Under this authority, bankruptcy courts consider the

overall wisdom of compromising and settling disputes arising in bankruptcy cases.  *See, e.g., In re Air Safety Developmental, L.C.,* 336 B.R. 843 (S.D. Fla. 2005); *In re Marvel Entertainment Group, Inc.,* 222 B.R. 243, 249 (D.Del. 1998) (*citing Protective Comm. for Indep. Stockholders of TM Trailer Ferry, Inc. v. Anderson,* U.S. 414 (19968)).   In reviewing a proposed settlement, the Court's ultimate inquiry should be "whether the proposed settlement is fair and equitable."  *In re Air Safety Developmental, L.C.,* 336 B.R. at 843 (*citing In re Gallagher,* 283 B.R. 342, 246 (Bankr. M.D. Fla. 2002) (*citing Protective Comm.,* 390 U.S. at 424)).   Ultimately, the question is not whether a better settlement might have been achieved or a better result reached if litigation pursued.   Instead, the court should approve settlements that meet a minimal threshold of reasonableness.   *See e.g., In re Bicoastal Corp.,* 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993) ("This Court has broad discretion to approve a settlement or compromise, and it should do so under the proposed settlement falls below the lowest point in the range of reasonableness.")

22.    The terms of the Settlement Agreement are fair and equitable, and approval of the Settlement Agreement is in the best interests of both the Debtor's bankruptcy estate and the holders of the Bonds.  The Settlement Agreement, if approved, resolves all potential disputes and controversies between the Debtor and the Bond Trustee, avoids potentially costly and protracted litigation, and avoids costly administrative expenses which would be incurred if the Debtors fully litigated the issues on confirmation of a plan over any objection of the Bond Trustee.  The Settlement Agreement resolves the largest claims in this case.

WHEREFORE, the Debtor respectfully requests that this Court enter a final order approving the compromise set forth in the Settlement Agreement, and providing such other and further relief as is just and proper.

JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP

/s/ Michael C. Markham
Michael C. Markham (FBN: 768560)
401 East Jackson Street #3100
Tampa, FL 33602
Telephone:  813-225-2500
Email:  mikem@jpfirm.com
Attorneys for Debtor

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion has been furnished by U.S. mail on all creditors (see attached Matrix) and electronically on the CM/ECF participants (indicated on the attached Matrix with a "+" symbol) on this 16th day of May, 2022.


/s/ Michael C. Markham
Michael C. Markham

## EXHIBIT A TO MOTION

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement") is made as of May 10, 2022 (the "Effective Date") by and among (i) Senior Care Living VII, LLC (the "Debtor"), (ii) Mark C. Bouldin ("Bouldin"), (iii) UMB Bank, N.A., in its capacity as successor bond trustee (the "Bond Trustee") under that certain Trust Indenture and Security Agreement dated as of November 1, 2016 (the "Bond Indenture") between Woodloch Health Facilities Development Corporation (the "Issuer") and Branch Banking and Trust Company, as the prior bond trustee, and (iv) UMB Bank, N.A., in its capacity as successor master trustee (the "Master Trustee" and together with the Bond Trustee, the "Trustee") under that certain Master Trust Indenture, Deed of Trust and Security Agreement (the "Master Indenture") between the Debtor and Branch Banking and Trust Company, as the prior master trustee (collectively, the "Parties" and each individually being a "Party"):

WHEREAS, on January 10, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court") commencing the bankruptcy case currently pending under the caption *In re Senior Care Living VII, LLC,* Case No. 22-00103 (the "Bankruptcy Case");

WHEREAS, prior to the Petition Date, the Issuer, at the request of the Debtor, issued the following series of bonds: (i) $35,925,000 Senior Housing Revenue Bonds (Inspired Living at Lewisville Project) Series 2016A-1; (ii) $2,555,000 Taxable Senior Housing Revenue Bonds (Inspired Living at Lewisville Project) Series 2016A-2; (iii) $1,915,000 Taxable Senior Housing Revenue Bonds (Inspired Living at Lewisville Project) Series 2016A-3; and (iv) $4,990,000 Subordinate Senior Housing Revenue Bonds (Inspired Living at Lewisville Project) Series 2016B (collectively, the "Bonds"). Pursuant to that certain Loan Agreement dated as of November 1, 2016 between the Issuer and the Debtor (the "Loan Agreement"), the Issuer loaned the proceeds of the Bonds to the Debtor for the purpose of acquiring, constructing, developing, furnishing and equipping a senior living facility known as "Inspired Living at Lewisville" located in the City of Lewisville, Texas;

WHEREAS, the rights of the Issuer under the Loan Agreement were assigned to the Bond Trustee pursuant to the Bond Indenture as security for the Bonds. The Debtor's obligations with respect to the Bonds are further secured by (i) the Master Indenture; (ii) that certain Multiple Indebtedness Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Deed of Trust"), and (iii) that certain Guaranty Agreement executed by Bouldin dated as of November 1, 2016 (the "Guaranty", and collectively with the Bond Indenture, the Master Indenture, the Loan Agreement, the Deed of Trust, and all other documents evidencing or securing the Bonds, the "Bond Documents"). Pursuant to the Bond Documents, the Borrower granted to the Master Trustee a mortgage and security interest against substantially all of the Borrower's assets (all such collateral so granted under the Bond Documents, the "Collateral");

WHEREAS, as of the Petition Date, the total amount outstanding on the Bonds was $54,060,936.15, comprised of $45,385,000 in outstanding principal and $8,675,936.15 in outstanding interest (the "Bond Claim"); and

WHEREAS, the Parties have engaged in good faith, arm's-length negotiations regarding, among other things, the treatment of the Bond Claim in the Bankruptcy Case, and, as a result of such discussions, have reached a settlement and compromise pursuant to which and on the terms set forth more fully below the Trustee will accept payment in full and final satisfaction of the Debtor's obligations under the Bond Documents and Bouldin's obligations under the Guaranty.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

1.      <u>Affirmation of Recitals</u>. The Recitals set forth above are true and correct and are hereby incorporated herein by this reference.

2.      <u>Settlement Payment and Other Consideration</u>.

(a)      *<u>Payment to the Trustee</u>*. On or before June 10, 2022, the Debtor shall pay or cause to be paid to the Trustee a total payment of $36,000,000 less the amount of any monies held in the Debt Service Reserve Fund (as such term is defined in the Bond Documents) as of the date of such payment (the "<u>Settlement Payment</u>").

(b)      *<u>Filing of DIP Motion and Settlement Motion</u>*.

(i)      In order to fund the Settlement Payment, the Debtor shall file a motion (the "<u>DIP Motion</u>") with the Bankruptcy Court seeking entry of an order on an expedited basis authorizing the Debtor to obtain postpetition debtor-in-possession financing (such order, the "<u>DIP Order</u>"). The DIP Motion shall be filed with the Bankruptcy Court on or before May 16, 2022 and a hearing on the DIP Motion shall be held on or before June 2, 2022.

(ii)      The Debtor shall file a motion (the "<u>Settlement Motion</u>") with the Bankruptcy Court seeking entry of an order on an expedited basis approving this Agreement on or before May 16, 2022. A hearing on the Settlement Motion shall be held on or before June 2, 2022.

(c)      *<u>Release of the Debtor and Bouldin</u>*. Subject to and effective upon the occurrence of the Effective Date, the Trustee shall be deemed to have forever released, discharged, waived and abandoned any and all claims, whether direct or indirect, rights, demands, suits, matters, issues or causes of action, whether known or unknown, whether based on federal, state, local statutory or common law, rule or regulation, by contract or in equity that it may have, as of the date of this Agreement, against the Debtor, Bouldin and each of their respective present and former parents, subsidiaries, affiliates, divisions, successors, transferees, partners, principals, officers, directors, employees, agents, attorneys, and assigns (in each case, solely in their capacities as such) (collectively, the "<u>Released Debtor Parties</u>"), arising from, in any way based upon, or in any way related to the negotiation, entry into or performance of this Agreement, the Bond Claims, the Bond Documents, including the Guaranty, the Released Debtor Parties' conduct whether prior to or during the Bankruptcy Case, and any claim and/or interest arising under or in connection with the Collateral.

(d)      *<u>Release of the Trustee and Holders</u>*. Subject to and effective upon the occurrence of the Effective Date, the Debtor and Bouldin shall be deemed to have forever released,

discharged, waived and abandoned any and all claims, whether direct or indirect, rights, demands, suits, matters, issues or causes of action, whether known or unknown, whether based on federal, state, local statutory or common law, rule or regulation, by contract or in equity that it may have, as of the date of this Agreement, against the Trustee, all holders of the Bonds ("Holders") and each of their respective present and former parents, subsidiaries, affiliates, divisions, successors, transferees, partners, principals, officers, directors, employees, agents, attorneys, and assigns (in each case, solely in their capacities as such) (collectively, the "Released Trustee Parties"), arising from, in any way based upon or in any way related to the negotiation, entry into or performance of this Agreement, the Bond Claims, the Bond Documents, the Trustee Released Parties' conduct whether prior to or during the Bankruptcy Case, and any claim and/or interest arising under or in connection with the Collateral.

3.    Support for Settlement. From and after the date of the execution of this Agreement, each of the Parties shall use commercially reasonable efforts to obtain the entry of an order by the Bankruptcy Court in a form agreed to by the Parties approving this Agreement (the "Settlement Order") and otherwise obtain the approval by the Bankruptcy Court of the settlement and compromise set forth in this Agreement.

4.    Further Assurances. From time to time, as and when requested by a Party hereto, any other Party hereto shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other action (subject to any limitations set forth in this Agreement), as such other Party may reasonably deem necessary or desirable to consummate the transactions contemplated by this Agreement.

5.    Conditions Precedent to Effectiveness of Agreement.

(a)    Notwithstanding any other provision of this Agreement, this Agreement shall not become effective until each of the following shall have occurred:

(i)    The entry of the Settlement Order by the Bankruptcy Court; and

(ii)    Delivery of the Settlement Payment to the Trustee on or before June 10, 2022.

The date upon which each of the foregoing conditions shall have occurred may be referred to in this Agreement as the "Effective Date".

(b)    If (i) the Bankruptcy Court denies the DIP Motion or the Settlement Motion or refuses to enter the Settlement Order or DIP Order in a form acceptable to the Parties, or (ii) if the Settlement Order is not entered by June 10, 2022, or (iii) the Settlement Payment is not delivered to the Trustee by June 10, 2022, then this Agreement shall be null and void and all Parties shall be released of their obligations hereunder and shall be returned to their respective legal positions as of the time immediately prior to execution of this Agreement.  Provided that the Parties have used good faith efforts to seek the entry of such Settlement Order and to support the entry of the Settlement Order, then no Party shall have any liability to any other Party, and shall be deemed to have waived the right to assert any claim on account of the inability to obtain the entry of such Settlement Order. For the avoidance of doubt, this Agreement does not constitute a finding as to the value of the Collateral securing the Bond Claim, shall have no binding effect on or any findings

related to the value of the Collateral securing the Bond Claim, and shall not and cannot be used by any Parties to establish the value of the Collateral securing the Bond Claim.

6.    <u>Representations</u>.

(a)    The Trustee represents and warrants subject to and effective upon the occurrence of the Effective Date, and upon entry of the Settlement Order, that it has been authorized to execute and deliver this Agreement and any other documentation contemplated by this Agreement to which it is or will be a party, and that, assuming proper authorization, execution and delivery by the designated counterparties to such agreements, that based upon entry of the Settlement Order and the provisions thereof as contemplated herein, this Agreement constitutes, and the other documents contemplated by this Agreement to which it is or will be a party will constitute, the legal, valid and binding obligation of the Trustee, enforceable against the Trustee in accordance with their terms, except as the enforceability thereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the rights and remedies of creditors.

(b)    The Debtor represents and warrants subject to and effective upon the occurrence of the Effective Date, that it has been authorized to execute and deliver this Agreement and any other documentation contemplated by this Agreement to which it is or will be a party, and that, assuming proper authorization, execution and delivery by the designated counterparties to such agreements, that based upon entry of the Settlement Order and the provisions thereof as contemplated herein, this Agreement constitutes, and the other documents contemplated by this Agreement to which it is or will be a party will constitute, the legal, valid and binding obligation of the Debtor, enforceable against the Debtor in accordance with their terms, except as the enforceability thereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the rights and remedies of creditors.

(c)    Bouldin represents and warrants subject to and effective upon the occurrence of the Effective Date, that he is of sound mind and capacity to execute and deliver this Agreement and any other documentation contemplated by this Agreement to which he is or will be a party, and that, assuming proper authorization, execution and delivery by the designated counterparties to such agreements, that based upon entry of the Settlement Order and the provisions thereof as contemplated herein, this Agreement constitutes, and the other documents contemplated by this Agreement to which he is or will be a party will constitute, the legal, valid and binding obligation of Bouldin, enforceable against Bouldin in accordance with their terms, except as the enforceability thereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the rights and remedies of creditors.

7.    <u>No Assignment</u>. The Parties warrant and represent that they are the holders and owners of the claims subject to the respective releases set forth herein, that such claims have not been assigned or otherwise conveyed to any other person, firm or entity, and that they have the right to surrender, compromise and settle the claims covered by the terms of this Agreement.

8.    <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of, and shall be binding on, the Parties, and their respective successors and assigns.

9.    <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the Parties.  All prior understandings, representations and agreements are merged in this Agreement, and this Agreement shall not be modified in any manner, except by written instrument signed by the Parties.  The Parties attest that this Agreement is voluntarily made after ample opportunity to review the document with any individuals, advisors and counsel.

10.    <u>Amendments</u>. No variation or amendment of this Agreement shall be valid unless it is in writing and signed by or on behalf of all Parties to this Agreement.

11.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall constitute an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

12.    <u>Governing Law</u>. This Agreement shall be interpreted, construed and governed according to the laws of the State of Texas without regard to its conflicts of laws rules.

13.    <u>Acknowledgements</u>. The Parties acknowledge that this Agreement is being entered into in good faith, is the product of arms-length negotiations, and that good and sufficient consideration has been provided for all of the obligations set forth herein.

14.    <u>Non-Severability</u>. Except as all Parties may otherwise agree in writing, all provisions of this Agreement are essential, non-severable terms of this Agreement.

15.    <u>Titles and Headings</u>. Titles and headings of the paragraphs of this Agreement are for convenience of reference only and shall not affect the construction of any provision of this Agreement.

[SIGNATURES ON NEXT PAGE]

IN WITNESS WHEREOF, the Parties have executed and delivered this Agreement as of the Effective Date.


SENIOR CARE LIVING VII, LLC


_____
Name:
Title:


MARK C. BOULDIN


_____
Name:


UMB BANK, National Association, as Master Trustee and Bond Trustee


_____
Name:
Title:

Label Matrix for local noticing
113A-8
Case 8:22-bk-00103-CED
Middle District of Florida
Tampa
Mon May 16 15:30:25 EDT 2022

Baxter Construction, Co.
GrayRobinson, P.A.
Steven J. Solomon, Esq.
333 SE 2nd Avenue, Suite 3200
Miami, FL 33131-2191

Matthew Huckin
Valhalla Real Estate
3605 Caruth Boulevard
Dallas, TX 75225-5102

Kenneth W Mann
SC&H Group, Inc
6011 University Boulevard
Suite 490
Ellicott City, MD 21043-6107

Mary L. Peebles
232 S. Highland St., Ste. 102
Memphis, TN 38111-4529

Senior Care Living VII, LLC
3665 East Bay Drive, Ste. 204-429
Largo, FL 33771-1990

A Place for Mom, Inc.
PO Box 913241
Denver, CO 80291-3155

ASSA Abloy Global Solutions
PO Box 676947
Dallas, TX 75267-6694

Accushield, LLC
Suite 360
2030 Powers Ferry Rd SE
Atlanta, GA 30339-5016

Airgas USA, LLC
PO Box 734672
Dallas, TX 75373-4672

Allegra
107 N Jefferson St
Tampa, FL 33602-5001

Aquarium Environments, Inc.
d/b/a Fish Gallery
2909 Fountainview Drive
Houston, TX 77057-6105

Aquarius Water Refining
PO Box 337
Wimauma, FL 33598-0337

Arrow Exterminators, Inc.
5750 Rufe Snow Drive
North Richland Hills, TX 76180-6163

Baxter Construction Company
3225 Avenue N
Fort Madison, IA 52627-3553

Baxter Construction, Co
c/o Steven J. Solomon, Esq.
GrayRobinson, P.A.
333 SE 2nd Avenue, Suite 3200
Miami, FL 33131-2191

Best Celebrity Talent
Attn:  Rhonda Medina
700 Meadow Bend Court
Lewisville, TX 75077-8606

Bluestone Pools, LLC
PO Box 92923
Southlake, TX 76092-0923

Cawley Company
PO Box 2110
Manitowoc, WI 54221-2110

Commercial Safety Systems
PO Box 8499
Seminole, FL 33775-8499

Community Payroll
Suite 400
301 Anchor Plaza Parkway
Tampa, FL 33634

D. Park Smith
Law Office of D. Park Smith
250 Cherry Springs Road, Suite 200
HUNT, TX 78024-3010

Denton County Tax Collector
110 W Hickory Street
Denton, TX 76201-4168

Department of Revenue
PO Box 6668
Tallahassee FL 32314-6668

Direct Supply
PO Box 88201
Milwaukee, WI 53288-8201

Echo Lab
PO Box 70343
Chicago, IL 60673-0343

Eldermark Software
PO Box 844707
Boston, MA 02284-4707

FL Dep of Revenue
Collection Agency Section
5050 W Tennessee St.
Tallahassee, FL 32399-6586

G5 Search Marketing, Inc.
Dept LA 23988
Pasadena, CA 91185-0001

HD Supply Facilities Mtnce
PO Box 509058
San Diego, CA 92150-9058

HM LIfe Insurance Company
PO Box 382038
Pittsburgh, PA 15251-8038

Hunter-Kelsey of Texas, LLC
Dennis Leone
SHANKMAN LEONE, P.A.
707 North Franklin Street, 5th Fl
Tampa, FL 33602-4419

Hunter-Kelsey of Texas, LLC
c/o Howard Marc Spector
SPECTOR & COX, PLLC
12770 Coit Road, Suite 850
Dallas, Texas 75251-1364

Hunter-Kelsey of Texas, LLC as Agent and
Attorney-In-Fact for Tarpon Hunters, LLC
c/o Howard Marc Spector
Spector & Cox, PLLC
12770 Coit Road, Suite 850
Dallas, TX 75251-1364

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

J. Robert Medlin
FTI Consulting
2001 Ross Avenue, Ste. 650
Dallas, TX 75201-2923

Konica Minolta Business Solutions
Dept. 2366
PO Box 122366
Dallas, TX 75312-2366

Magnolia Fisheries
PO Box 3087
Coppell, TX 75019-7001

McKesson Medical-Surgical
PO Box 204786
Dallas, TX 75320-4786

Our Place Tuxedos & Uniforms
2044 Smith Street
North Providence, RI 02911-1785

Senior Care Living VI, LLC
6400 Oilfield Rd
Sugar Land, TX 77479-9622

Senior Living Specialists
14580 Berklee Drive
Addison, TX 75001-3532

Shred it
c/o Stericycle, Inc.
28883 Network Place
Chicago, IL 60673-1288

Silversphere, LLC
Suite 200
2570 W Int'l Speedway Blvd
Daytona Beach, FL 32114-8145

Sodexo, Inc & Affiliates
PO Box 360170
Pittsburgh, PA 15251-6170

Songs & Smiles
Suite 260
129 S Main Street
Grapevine, TX 76051-5488

TK Elevator Corp. fka ThyssenKrupp Elevator
c/o Law Office of D. Park Smith
250 Cherry Springs Road, Suite 200
HUNT, TX 78024-3010

TX Comptroller Public Accts
PO Box 13528, Capital Station
Austin, TX 78711-3528

Tarpon Hunters, LLC
7200 N. Mopac Expressway #120
Austin, TX 78731-3058

Thyssenkrupp Elevator Corp
PO Box 3796
Carol Stream, IL 60132-3796

UMB Bank, NA Master Trustee
120 S. Street #1400
Minneapolis, MN 55402

US Foods, Inc.
PO Box 843202
Dallas, TX 75284-3202

VSL HOldings, LLC
Suite 400
4301 Anchor Plaza Parkway
Tampa, FL 33634-7529

Validus Senior Living REIT
Suite 400
4301 Anchor Plaza Parkway
Tampa, FL 33634-7529

Welcome Home Software, Inc.
2829 Normandy Drive NW
Atlanta, GA 30305-2824

Michael C Markham +
Johnson Pope Bokor Ruppel & Burns LLP
401 East Jackson Street, Suite 3100
Tampa, FL 33602-5228

Steven J Solomon +
GrayRobinson, PA
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131-2191

United States Trustee - TPA +
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602-3949

J Steven Wilkes +
Office of United States Trustee
501 East Polk Street
Tampa, FL 33602-3949

Ryan C Reinert +
Shutts & Bowen LLP
4301 W Boy Scout Blvd, Ste 300
Tampa, FL 33607-5716

Dennis D Leone +
Shankman Leone PA
707 N. Franklin Street, 5th Floor
Tampa, FL 33602-4419

Daniel S Bleck +
Mintz Levin
One Financial Center
Boston, MA 02111-2657

Howard Marc Spector +
Spector & Cox, PLLC
12770 Coit Road, Suite 850
Dallas, TX 75251-1364

Timothy J McKeon +
Mintz Levin
One Financial Center
Boston, MA 02111-2657

Dallas Taylor +
Mintz Levin
666 Third Avenue
New York, NY 10017-4011

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Brimmer Burek & Keelan, LLP

(u)Caryl E. Delano
Tampa

(u)Hunter-Kelsey of Texas LLC

(u)UMB Bank, N.A.

(d)Baxter Construction Company
3225 Avenue N
Fort Madison, IA 52627-3553

End of Label Matrix
Mailable recipients    65
Bypassed recipients     5
Total                  70