ORDERED.

**Dated:  December 27, 2022**

Caryl E. Delano
Chief United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

In re:                                                    **Chapter 11**

**SENIOR CARE LIVING VII, LLC,**              **Case No. 8:22-bk00103-CED**

        **Debtor.**
_____/

**ORDER GRANTING SALE MOTION AND AUTHORIZING**
**THE SALE OF DEBTOR'S EXCESS LAND PURSUANT TO 11 U.S.C.**
**§§ 363 AND 363, FREE AND CLEAR OF ALL LIENS, CLAIMS AND**
**ENCUMBRANCES, SUBJECT TO HIGHER AND BETTER OFFERS**

THIS CASE came on for a sale hearing before the Court on December 19, 2022, at 2:00

p.m. (the "Sale Hearing"), upon the Debtor's Motion for Order Authorizing the Sale of

Substantially All Assets and Assumption and Assignment of Designated Contracts Pursuant to 11

U.S.C. §§ 363, Free and Clear of All Liens, Claims and Encumbrances, Subject to Higher and

Better Offers at Auction (Doc. No. 206) (the "Sale Motion")[1], filed by Senior Care Living VII,

LLC (the "Debtor").

---

[1]        Unless otherwise defined in this Order, capitalized terms used in this Order shall have the meaning
ascribed to such terms in the Sale Motion or the Purchase Agreement (as defined herein), as applicable.

The Court finds that the Debtor and MPH Partners, LLC (the "Purchaser"), entered into an Commercial Contract of Sale, dated as of August 8, 2022 (the "Purchase Agreement"), which provides for the sale by the Debtor, and the purchase by the Purchaser, pursuant to 11 U.S.C. §363, of the Debtor's Excess Land (the "Excess Land") for a total cash purchase price of $1,683,445.00 (the "Purchase Price").  The sale of the Excess Land to the Purchaser will be free and clear of any and all claims (including "claims" as defined in Section 101(5) of the Bankruptcy Code), mortgages, pledges, liens, security interests, interests, charges, encumbrances, setoffs, recoupments, cure claims, liabilities, debts, indebtedness, costs, damages, judgments or obligations of any character whatsoever and whenever arising, either before or after the Petition Date (collectively, the "Encumbrances") other than any Permitted Encumbrances, with such Encumbrances to attach to the proceeds of the sale in the same order of priority that existed prior to such sale as further described below in this Order.  The sale to the Purchaser pursuant to the Purchase Agreement was subject to higher and better offers.

In connection with the proposed sale by the Debtor of the Excess Land, on August 30, 2022, the Court entered its Bidding Procedures Order (Doc. No. 187) and on November 22, 2022, the Court entered its Amended Bidding Procedures Order (Doc. No. 222) (collectively, the "Bid Procedures Order").   In the Bid Procedures Order, the Court established various deadlines, including a Bid Deadline of December 9, 2022 (the "Bid Deadline").  The Bidding Procedures attached to the Bidding Procedures Order also described the procedures for the submission of competing bids (the "Competing Bid Procedures") for the purchase of the Debtor's assets.

On September 1, 2022, the Debtor mailed or served the Bidding Procedures Order (which contained notice of the sale and various deadlines), by United States first class mail or CM/ECF transmission, to (i) all parties and creditors on the Court's mailing matrices for this case (including all parties listed on the Local Rule 1007-2 Parties in Interest List for this case), (ii) all parties

2

which, to the knowledge of the Debtor, have, or have asserted, liens on the Excess Land, (iii) all parties on the Bidder List (as defined in the Bid Procedures Order), and (iv) all parties receiving CM/ECF Transmission in this case (Doc. No. 192).

On October 27, 2022, the Debtor filed the Sale Motion with the Court. The Sale Motion contained a certificate of service as to service of the Sale Motion upon the Office of the United States Trustee, all parties set forth on the Local Rule 1007(d) Parties in Interest List for this case (including the twenty (20) largest unsecured creditors of the Debtor), all other creditors of the Debtor as set forth on the Court's master mailing matrix for this case, and all parties receiving CM/ECF Transmission in this case.

On December 16, 2022, the Debtor filed with the Court the Declaration of Matthew Huckin (Doc. No. 244 – the "Huckin Declaration"), and on December 19, 2022, the Debtor filed the Declaration of Vino Patel (Doc. No. 246), both in support of the Sale Motion. The Huckin Declaration set forth the efforts conducted by the Debtor's Court-approved real estate broker, Matthew Huckin and Valhalla Real Estate, to market the sale of the Excess Land.

The Court finds that the Competing Bid Procedures have been duly complied with in all respects by the Debtor. The Court finds that the implementation and conduct of the Competing Bid Procedures were fair and reasonable under the circumstances and reasonably calculated to achieve the highest and best price for the Excess Land for the benefit of the Debtor's estate and creditors. The Court finds that the Bid Procedures Order and the Sale Motion were served on all parties interested in acquiring the assets (collectively, the "Potential Bidders"), in order to achieve selection of the highest and best offer for the sale of the assets.

The Court finds that notice of the Sale Motion and the Sale Hearing to creditors and other parties in interest, was adequate and sufficient, that it complied in all respects with the Bankruptcy

3

Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court and otherwise satisfies the requirements of due process.

At the Sale Hearing, counsel to the Debtor announced that the Winning Bidder for the purchase of the Excess Land was the Purchaser as the Purchaser was the only Qualified Bidder for the Excess Land.  *See* Doc. No. 239 (Notice of Qualified Bids).

No objections were filed to the Sale Motion or otherwise raised at the Sale Hearing, except for the Limited Objections filed by Lewisville Independent School District ("Lewisville ISD") (Doc. No. 215), County of Denton, Texas ("Denton County") (Doc. No. 240), and Hunter-Kelsey of Texas, LLC ("Hunter-Kelsey") (Doc. No. 242, and collectively, the "Objections").   For the reasons announced on the record at the Sale Hearing, any and all objections are overruled based on the terms set forth in this Order.

At the Sale Hearing, the Bid of the Purchaser as set forth in the Purchase Agreement was selected by the Court as the highest and best offer for the Debtor's Excess Land.  In that regard, the Court finds that, based upon the entire record:

(a)     The Debtor has advanced sound and sufficient business reasons and it is a reasonable exercise of the Debtor's business judgment pursuant to Section 363 of the Bankruptcy Code to sell its Excess Land to the Purchaser, in accordance with the terms of the Purchase Agreement.   The sale to the Purchaser is further justified by the circumstances described in the Sale Motion and the representations and proffers offered in support of the Sale Motion at the Sale Hearing and at previous hearings before this Court and in the Declarations.

(b)     The Purchase Agreement resulted from an extensive search and marketing process and good faith arm's-length negotiations.  The Purchaser is not an affiliate of the Debtor under 11 U.S.C. §101(2) or an insider of the Debtor under 11 U.S.C. §101(31).

(c)     The Debtor and the Purchaser have each acted in good faith and without collusion or fraud in connection with the preparation, negotiation and/or execution of the Purchase Agreement, the subject matter of the Sale Motion and this Order, and the implementation of the Bid Procedures Order.  Without limiting the foregoing, the Purchase Agreement has been negotiated in good faith, at arm's-length, and not by

4

any means forbidden by law. The Court specifically finds that the Purchaser has acted in good faith in pursuing and closing the transactions contemplated under the Purchase Agreement for purposes of Section 363(m) of the Bankruptcy Code or otherwise. Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under Section 363(n) of the Bankruptcy Code.

(d)     The consideration provided by the Purchaser for the purchase of the Debtor's Excess Land pursuant to the Purchase Agreement exceeds what the Debtor would be able to realize in a liquidation of such asset, and represents fair, adequate and the highest possible consideration for such Excess Land.

(e)     The Debtor has articulated good and sufficient business justifications for the sale to the Purchaser pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code.

(f)     The sale to the Purchaser satisfies one or more of the requirements of Section 363(f) of the Bankruptcy Code as to all secured creditors of the Debtor.

(g)     The offer of the Purchaser evidenced by the Purchase Agreement constitutes the highest and best offer for the Debtor's Excess Land.

(h)     The relief requested in the Sale Motion is a necessary and appropriate step toward enabling the Debtor to successfully conclude this Chapter 11 case.

(i)     The sale of the Debtor's Excess Land to the Purchaser pursuant to the Purchase Agreement is in the best interests of the Debtor, its creditors and its estate and all parties in interest.

The Court considered the Sale Motion, together with the record and the arguments and proffers of counsel at the Sale Hearing and throughout this Chapter 11 case and the Declarations, and being otherwise duly advised in the premises, and for the reasons stated orally and recorded in open court at the Sale Hearing, which shall constitute the decision of the Court as if fully set forth herein, it is

**ORDERED**:

1.     The Sale Motion is GRANTED with respect to the Excess Land as set forth hereinbelow.

2.      All Objections are overruled based on the terms of this Order relating to ad valorem tax creditors.

3.      The findings of fact set forth above in this Order be, and the same hereby are, ratified and adopted as findings of this Court and are incorporated herein.  To the extent any of the findings of fact set forth herein are deemed to be conclusions of law, then such findings are hereby confirmed as conclusions of law.

4.      This Court has jurisdiction to consider the Sale Motion pursuant to 28 U.S.C. §§157 and 1334.  The subject matter of the Sale Motion is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper in this district pursuant to 28 U.S.C. §1408.

5.      The Bid by the Purchaser set forth in the Purchase Agreement to purchase the Debtor's Excess Land is the highest and best offer for the purchase of the Debtor's Excess Land and represents fair, adequate and the highest possible consideration for the Debtor's Excess Land.

6.      The form and substance of the Purchase Agreement and the transactions contemplated thereby are hereby approved in all respects.  After the date of entry of this Order, to the extent the Debtor and the Purchaser enter into any amendment to the Purchase Agreement, the Debtor and the Purchaser shall file such amendment with the Court.  After the date of entry of this Order, the Debtor and the Purchaser may enter into any non-material amendment or modification to the Purchase Agreement that is not adverse to the Debtor's estate without the need of further hearing or Court order subject to providing prior notice to the Bond Trustee and the opportunity for the Bond Trustee to object to such amendment.

7.      The execution, delivery and performance of the Purchase Agreement by the Debtor are hereby ratified and authorized in all respects.

8.     Subject to the terms and conditions of the Purchase Agreement, the Debtor shall be, and hereby is, authorized and directed to sell, transfer, assign and deliver the Excess Land to the Purchaser free and clear of any and all Encumbrances, subject to the payment by the Purchaser of the Purchase Price, and the attachment of the Encumbrances to the proceeds of the sale as described elsewhere in this Order.  The Debtor is authorized to execute and deliver all documents (both before and after the Closing) and to take all appropriate actions necessary to evidence and consummate the Closing on the sale of the Excess Land to the Purchaser and the transactions contemplated thereby.

9.     The transfer of the Excess Land to the Purchaser will be a legal, valid, and effective transfer of the Excess Land and will vest the Purchaser with all right, title and interest in and to the Excess Land, free and clear of all Encumbrances of any kind or nature whatsoever subject to the attachment of the Encumbrances to the proceeds of the sale as described elsewhere in this Order, other than any Permitted Encumbrances, including, but not limited to (i) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Excess Land prior to the Closing, and (ii) (A) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, statutory liens, judgments, rights of setoff, demands, encumbrances, rights of first refusal, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership, including that certain Regulatory and Land Use Restriction Agreement  by and between the Issuer, Branch Banking and Trust Company, and the Debtor dated as of November 1, 2016 which is terminable via foreclosure and thus subject to removal by this order under section 363(f)(1) of the Bankruptcy Code, and (B) all debts arising in any way in connection with any agreements, acts, or

failures to act of the Debtor and Encumbrances, including those arising under doctrines of successor liability.

10.    At the Closing, the Purchaser shall pay or deliver the Purchase Price as provided in the Purchase Agreement or as otherwise mutually agreed by the Debtor and the Purchaser.  All proceeds of the sale shall be held in a debtor-in-possession account requiring the signature of Michael C. Markham, Debtor's counsel, subject to the terms set forth below, as applicable, and pending further order of this Court, with all remaining Encumbrances attaching exclusively to such sale proceeds in the same order of priority that existed prior to the Closing.

11.    The Encumbrances securing claims for unpaid real estate taxes, including those asserted by Hunter-Kelsey, Denton County and Lewisville ISD, and claims held by the Bond Trustee shall automatically attach to the proceeds from the sale of the Excess Land, to the same extent, validity and priority as existed on such asset as of the Petition Date.  The Debtor reserves all rights, claims and defenses against the holders of the Encumbrances, including the ability to challenge the extent, validity, priority or perfection of any such Encumbrances.  Any challenge or objection to the Encumbrances securing claims for unpaid real estate taxes, including those asserted by Hunter-Kelsey, Denton County, and Lewisville ISD, and claims held by the Bond Trustee (a "Challenge") shall be asserted **on or before January 31, 2023** (the "Challenge Deadline").  In the event no Challenge is filed by the Challenge Deadline, all rights, claims and defenses, including the ability to challenge the extent, validity, priority or perfection of any Encumbrance, shall be waived and released and such claims shall be deemed allowed claims and payable to the same extent, validity and priority as existed on the Excess Land as of the Petition Date.  In the event a Challenge is timely filed, the Court will conduct a hearing on the Challenge on **February 13, 2023, at 2:30 p.m.**

8

12.     At the Closing, the Debtor (or any party acting at the Debtor's direction, such as a closing agent, title company or escrow agent) is hereby authorized and directed to pay the normal costs associated with the closing of the sale, as applicable, including but not limited to, brokerage fees, title insurance, processing fees, underwriting fees, flood certifications, application fees, escrow fees, abstract or title search fees, title examination fees, document preparation fees, and notary fees.

13.     If any person or entity that has filed financing statements or other documents or agreements evidencing Encumbrances on or in the Excess Land shall not have delivered to the Debtor at or prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of Encumbrances which the person or entity has with respect to the Excess Land, the Debtor or the Purchaser, as the case may be, is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Excess Land.  The Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances in or on the Excess Land of any kind or nature whatsoever.

14.     The Debtor and the Purchaser have acted in good faith, the terms and conditions of the Purchase Agreement are fair and reasonable and have been negotiated and agreed upon in good faith on the part of the Debtor and the Purchaser, and the Purchaser is an arm's length purchaser who is purchasing the Excess Land in good faith and not an insider of the Debtor.  The Purchase Price constitutes reasonably equivalent and fair market value under the Bankruptcy Code and applicable non-bankruptcy law.  Accordingly, the Purchaser shall be entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

15.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Excess Land and a deed transferring good and marketable title in the Excess Land to the Purchaser free and clear of all Encumbrances other than any Permitted Encumbrances.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

16.     The Debtor shall not be liable for, and no portion of the Purchase Price shall be disbursed for, any brokerage commissions or finder's fees with respect to the sale of the Excess Land, absent application to and approval of the Court.

17.     The notice given by the Debtor of the Sale Motion and the Sale Hearing to creditors and other parties in interest, was adequate and sufficient, complied in all respects with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court and otherwise satisfies the requirements of due process.

18.     Any creditor, prospective purchaser, Potential Bidder, or other party in interest that did not file and serve, on or before the Deadline to file Objections to the Sale of December 16, 2022, a written objection to the Sale Motion or the sale contemplated by the Purchase Agreement shall be, and hereby is, conclusively deemed to have waived any objection it may have to the Sale Motion or the sale of the Excess Land to the Purchaser and to have released all Encumbrances in or on or with respect to the Excess Land, with such Encumbrances attaching to the proceeds of the sale as described elsewhere in this Order.

19.     With the sole exception of any obligations of the Purchaser under the Purchase Agreement or this Order, the Purchaser does not and shall not be deemed to, pursuant to the

Purchase Agreement or otherwise, assume, agree to perform, or pay any Encumbrances, liabilities, claims, debts or obligations of the Debtor.  The Purchaser shall not be, nor shall it be deemed to be, a successor or successor in interest to the Debtor by reason of any theory of law or equity, and the Purchaser shall not have any successor or transferee liability of any kind or character.

20.    The Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Excess Land other than as expressly set forth in this Order and in the Purchase Agreement.  Without limiting the effect or scope of the foregoing, the transfer of the Excess Land from the Debtor to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties to any liability for any Encumbrances or claims against the Debtor or the Excess Land by reason of such transfer or otherwise under the laws of the United States or any state, territory or possession thereof applicable to such transactions except with respect to the 2023 ad valorem taes as provided below in Paragraph 21.  Neither the Purchaser nor its affiliates, successors or assigns shall be deemed, as a result of any action taken in connection with the purchase of the Excess Land, to: (i) be a successor to the Debtor; (ii) have, *de facto* or otherwise, merged with or into the Debtor; or (iii) be a continuation or substantial continuation of the Debtor or any enterprise of the Debtor.  Neither the Purchaser nor its affiliates, successors or assigns is acquiring or assuming any liability, warranty or other obligation of the Debtor, including, without limitation, any tax incurred but unpaid by the Debtor prior to the Closing Date, including, but not limited to, any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, fixed or audited, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction, except as otherwise expressly provided in this Order or in the Purchase Agreement. Accordingly, the sale of the Excess Land to the Purchaser

shall be free and clear of all Encumbrances to the fullest extent allowed under applicable law and equity, all of which Encumbrances shall attach to the proceeds of the sale as described elsewhere in this Order and subject to Paragraph 21 below.

21.     **2023 Ad Valorem Taxes**.  The ad valorem property tax liens arising and attaching to the Excess Land by operation of law on January 1, 2023, shall remain attached to the Excess Land as a Permitted Encumbrance, and shall be paid pursuant to the terms of the Purchase Agreement.

22.     The terms and provisions of this Order shall be binding upon the Debtor and its estate, creditors and stakeholders, the Purchaser, and all other parties in interest and the respective successors and assigns of each of the foregoing (all of the foregoing whether known or unknown), including any trustee subsequently appointed for or on behalf of the Debtor under the Bankruptcy Code in this Chapter 11 case or upon a conversion to Chapter 7.

23.     The granting of the Sale Motion as set forth herein shall not constitute the approval of any plan of reorganization or liquidation for the Debtor.

24.     The 14-day stays set forth in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure are hereby waived, for good cause shown, and this Order shall be immediately enforceable and the Closing under the Purchase Agreement with the Purchaser may occur immediately following the entry of this Order.

25.     The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.  To the extent there is any inconsistency between the provisions of this Order and the terms of the

Purchase Agreement or the Sale Motion or any plan confirmed in this case or any order confirming such plan or any other order entered in this case, the provisions of this Order shall control.

26.    The Court shall retain jurisdiction (i) to interpret, implement and enforce the provisions of this Order, and (ii) to enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) subject to the terms and conditions of the Purchase Agreement, compel delivery of the Excess Land to the Purchaser or the performance of other obligations of the Debtor under the Purchase Agreement and each of the agreements executed in connection therewith, (b) compel delivery of the Purchase Price by the Purchaser or the performance of other obligations of the Purchaser under the Purchase Agreement and each of the agreements executed in connection therewith, including (without limitation) the timely payment of the Assumed Liabilities, (c) resolve any disputes arising under or related to the Purchase Agreement and each of the agreements executed in connection therewith, and (d) resolve any dispute regarding the validity, extent and/or priority of any alleged Encumbrance attaching to the proceeds of the sale of the Debtor's Excess Land; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the Purchase Agreement or each of the agreements executed in connection therewith or this Order, such abstention, refusal or lack of jurisdiction shall have no effect upon, and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

27.    Counsel for the Debtor is directed to serve a copy of this Order as provided below and on all parties served with the Sale Motion within three (3) days after the entry of this Order and thereafter to file a certificate of service with the Court.

*Attorney Michael C. Markham is directed to serve a copy of this order on interested parties who are CM/ECF users and to file a proof of service within 3 days of entry of this order*