UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                                Case No. 8:22-bk-00103-CED

Senior Care Living VII, LLC,                                Chapter 11

    Debtor.
_____/

**MOTION OF UMB BANK, N.A., IN ITS CAPACITY AS BOND TRUSTEE,
FOR ENTRY OF AN ORDER AUTHORIZING THE DISTRIBUTION
OF THE PROCEEDS FROM THE SALE OF THE DEBTOR'S ASSETS**

UMB Bank, N.A., in its capacity as successor bond trustee (the "Bond Trustee") and successor master trustee (the "Master Trustee", and together with the Bond Trustee, the "Bond Trustee"), files this motion, pursuant to the Sale Orders (as defined herein), requesting the entry of an order authorizing and directing the distribution of the proceeds from the sales of the Debtor's assets. In support of this motion, the Bond Trustee states as follows:

**RELIEF REQUESTED**

1.    By this motion, the Bond Trustee, in accordance with the procedure set forth in the Sale Orders, requests the entry of an order authorizing and directing the Debtor to distribute the Sale Proceeds (as defined herein) pursuant to the terms and conditions set forth herein. As the Court is aware, the Debtor has closed on its sales of the Excess Land and the Facility (as such terms are defined herein). Upon the closing of the sale of the Facility, which occurred on July 31, 2023, the Debtor's outstanding tax obligations owed to Lewisville ISD and The County of Denton, Texas (together, the "Taxing Authorities") were fully satisfied. As a result, there are now only two secured creditors that hold undisputed liens on the Sale Proceeds: (i) Hunter-Kelsey of Texas, LLC, as agent and attorney-in-fact for Tarpon Hunters, LLC ("Tarpon Hunters"), and (ii) the Bond

Trustee. Under the proposed distribution, the Sale Proceeds will be distributed on account of the allowed claims held by Tarpon Hunter and the Bond Trustee.[1]

2.      In light of the foregoing, and for the reasons detailed herein, good cause exists for the Court to grant the relief requested.

## RELEVANT FACTUAL BACKGROUND

**A.      The Bankruptcy Case and Sale of the Debtor's Assets**

3.      On January 10, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtor has continued to operate its business and manage its properties as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

4.      On December 27, 2022, the Court entered an order authorizing the Debtor to sell its assisted living facility (the "Facility") and related assets, including the real property on which the Facility is situated (Doc. Nos. 250, 362), as well as an order authorizing the Debtor to sell approximately four acres of undeveloped real property (the "Excess Land") immediately adjacent to the Facility (Doc. No. 251) (collectively, the "Sale Orders"). The total purchase price for the Debtor's assets from the approved sales (the "Sales") was $27,683.445.

5.      The Sale Orders provide, in relevant part, that:

> All proceeds of the sale shall be held in a debtor-in-possession bank account requiring the signature of Michael C. Markham, Debtor's counsel, subject to the terms set forth below, as applicable, and *pending further order of this Court*, with all remaining Encumbrances attaching exclusively to such sale proceeds in the same order and priority that existed prior to the Closing.

---

[1] In addition to the Sale Proceeds, the Bond Trustee further seeks leave to drawdown and distribute the monies held in trust by the Bond Trustee under the documents governing the Bonds (the "Trustee Held Funds"). While the Bond Trustee does not believe that such funds constitute property of the estate, and such funds are not Sale Proceeds, the Bond Trustee nevertheless makes this request out of an abundance of caution.

*Sale Orders*, ¶ 10 (*emphasis added*).

6. The Sale Orders further provide that:

> Any challenge or objection to the Encumbrances securing claims for unpaid real estate taxes, including those asserted by Hunter-Kelsey, Denton County, and Lewisville ISD, and claims held by the Bond Trustee (a "Challenge") shall be asserted **on or before January 31, 2023** (the "Challenge Deadline"). In the event no Challenge is filed by the Challenge Deadline, all rights, claims and defenses, including the ability to challenge the extent, validity, priority or perfection of any Encumbrance, shall be waived and released *and such claims shall be deemed allowed claims and payable to the same extent, validity and priority as existed on such Assets as of the Petition Date*.

*Id.* at 11 (*emphasis added*).

**B.  Secured Claims Asserted Against the Debtor**

  **i.  *The Taxing Authorities***

7. The Debtor's assets are encumbered by liens asserted by the Taxing Authorities related to the Debtor's outstanding tax obligations (collectively, the "Tax Claims"). No Challenge has been asserted with respect to the liens and/or claims held by the Taxing Authorities. Accordingly, the claims asserted by the Taxing Authorities are "deemed allowed claims and payable to the same extent, validity and priority as existed on such Assets as of the Petition Date." *Sale Orders*, ¶ 11.

8. The Tax Claims were fully satisfied upon the closing of the sale of the Facility.

  **ii.  *The Tarpon Claim***

9. On March 18, 2022, Tarpon Hunters filed a proof of claim (Claim No. 5-1) asserting a claim against the Debtor in the amount of $1,548,174.31 (the "Tarpon Claim"). Tarpon Hunters further asserts that the Tarpon Claim is secured by a lien on the Debtor's real property (the "Tarpon Lien").

10. On January 25, 2023, Tarpon Hunters filed a *Motion to Allow Post-Petition Claim Amounts* (Doc. No. 268) seeking the allowance of post-petition interest, as well as certain fees and

expenses, and requested that such amounts be added to the Tarpon Claim. As of the date of that motion, Tarpon Hunters alleged that its claim had increased by an additional $304,658.67, comprised of $289,133.05 in post-petition interest that has accrued from the Petition Date through January 31, 2023 and $15,525.62 in attorneys' fees and expenses.

11.     On January 31, 2023, the Bond Trustee commenced an action challenging the secured status of the Tarpon Claim and seeking, among other things, to reclassify the Tarpon Claim as a general unsecured claim (the "Challenge Action"). *See* Adv. Pro. No. 23-00017. On July 11, 2023, the Court entered an order dismissing the Challenge Action. *See* Adv. Pro. No. 23-00017, Doc. No. 32. No additional challenges to the Tarpon Claim were brought by the Debtor or any other party. The current amount of Tarpon Claim is $2,044,991.77.

    **iii.**    *The Bond Claim*

12.     The Bond Trustee serves as successor bond trustee and successor master trustee for the Senior Housing Revenue Bonds (Inspired Living at Lewisville Project) Series 2016 (the "Bonds"), which were issued in 2016 in the aggregate principal amount of $45,385,000 for the benefit of the Debtor. As security for the Debtor's obligations owing on the Bonds, the Bond Trustee holds a valid, first priority security interest in substantially all of the Debtor's assets, including the Facility and the Excess Land (subject only to the Tarpon Claim, as applicable).

13.     The Bond Trustee timely filed a proof of claim (Claim No. 4-1) for the total amount outstanding on the Bonds, *i.e.* $54,060,936.15, which is comprised of $45,385,000 in outstanding principal and $8,675,936.15 in outstanding interest (the "Bond Claim").

14.     No Challenge has been asserted against the validity of the Bond Claim or the secured status of such claim.[2] Accordingly, pursuant to the Sale Orders, the Bond Claim is

---

[2] A "limited challenge" was filed by Baxter Construction Company, LLC ("Baxter") (Doc. No. 274); however, no specific challenge or objection was raised with respect to the Bond Claim. While Baxter has indicated that it believes

4

"deemed [an] allowed claim[] and payable to the same extent, validity and priority as existed on such Assets as of the Petition Date." *Sale Orders*, ¶ 11.

## **RELIEF REQUESTED SHOULD BE GRANTED**

15. The Sale Orders approve the sale of the Debtor's assets for a combined purchase price in excess of $27 million, which, pursuant to the Sale Orders, will be held by the Debtor pending further order of this Court. By this motion, the Bond Trustee seeks such further order to allow for an immediate distribution of the proceeds that the Debtor received from the Sales following payment of certain closing costs and the Tax Claims (the "Sale Proceeds") to satisfy, in whole or part, the claims of Tarpon Hunter and the Bond Trustee while ensuring that certain monies continue to be held by the Debtor.[3] Specifically, the Bond Trustee requests that the Sale Proceeds be distributed as follows:

| Entity | Amount of Claim | Amount to be Paid | Proposed Escrow Amount |
|---|---|---|---|
| Tarpon Hunters | $2,044,991.77 | $2,044,991.77 | N/A |
| Bond Trustee | $54,060,936.15 | $24,515,240.37 | N/A |
| | **TOTAL** | **$26,560,232.14** | **N/A** |

16. Good cause exists to allow for the proposed distribution. As noted above, neither the claims nor liens asserted by Tarpon Hunter are subject to a pending Challenge, while the claims and liens held by the Bond Trustee have never been subject to a Challenge. As such, the Bond Claim and the Tarpon Claim are deemed allowed secured claims against the Debtor. Additionally, payment of the Tarpon Claim will prevent further diminution to the Bond Trustee's recovery on

---

it may have claims against the Bond Trustee, such claims are unrelated to the Bond Trustee's claim (including its secured claim) against the Debtor. *See Disclosure Statement for Debtor's Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code* (Doc. No. 278), pp. 11-12.

[3] The Bond Trustee is not seeking distribution of the Debtor's remaining assets, including cash and accrued A/R, which, upon information and belief, exceed $1 million, and which are subject to the Bond Trustee's lien.

its allowed claim. Moreover, following the closing of the sale of the Facility, the Debtor has no material operations that require that it continue to hold the Sale Proceeds.

17. Distribution of proceeds from the sale of a debtor's assets upon the closing of such sale and prior to the confirmation of a plan is commonly authorized by bankruptcy courts across the country. *See*, *e.g. In re Henry Ford Village, Inc.*, Bankr. E.D. Mich., Case No. 20-51066, Doc. No. 436, ¶ 15; *In re Mayflower Communities, Inc.*, Bankr. N.D. Tex., Case No. 19-30283, Doc. No. 318, ¶ 15; *In re Louisiana Pellets, Inc.*, Bankr. W.D. La., Case No. 16-80162, Doc. No. 661, ¶ 23.

18. Additionally, while the Bond Trustee does not believe such funds are part of the Debtor's estate, the Bond Trustee requests leave to drawdown and distribute the Trustee Held Funds in accordance with the bond documents to holders of the Bonds.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**CONCLUSION**

WHEREFORE, the Bond Trustee requests entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

| | |
|---|---|
| Dated: August 9, 2023 | **SHUTTS & BOWEN LLP** |
| | */s/ Ryan C. Reinert* |
| | Ryan C. Reinert |
| | Florida Bar No. 81989 |
| | Bridget M. Dennis |
| | Florida Bar No. 1024897 |
| | 4301 W. Boy Scout Blvd., Suite 300 |
| | Tampa, Florida 33607 |
| | Email: rreinert@shutts.com |
| | bdennis@shutts.com |

-and-

**MINTZ, LEVIN, COHN, FERRIS GLOVSKY AND POPEO, P.C.**

Daniel S. Bleck (admitted *pro hac vice*)
Timothy J. McKeon (admitted *pro hac vice*)
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Email: DSBleck@mintz.com
TJMcKeon@mintz.com
*Attorneys for the Bond Trustee*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 9, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of the Bankruptcy Court via the CM/ECF system, which electronically served a copy on all counsel of record, with a copy via U.S. Mail to Senior Care Living VII, LLC, 3665 East Bay Drive, Ste. 204-429, Largo, FL 33771 and all creditors on the attached matrix.

*/s/ Ryan C. Reinert*
Attorney