UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

IN RE:

SENIOR CARE LIVING VII, LLC,                    CASE NO. 8:22-bk-00103-CED
                                                Chapter 11

        Debtor.

_____/

**DEBTOR'S AMENDED PLAN UNDER
CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

Tampa, Florida
Dated as of September 15, 2023

JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP

/s/ Michael C. Markham
Michael C. Markham (FBN:  768560)
401 E. Jackson Street, Ste. 3100
Tampa, FL  33601-1100
Phone: 727-480-5118
Email:  mikem@jpfirm.com
Attorneys for Debtor

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE (THE "**PLAN**") SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNTIL SUCH TIME AS THE DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN CONDITIONALLY OR FINALLY APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THIS PLAN. THE PLAN PROPONENT RESERVES THE RIGHT TO FILE (I) A MODIFICATION OR SUPPLEMENT TO THIS PLAN OR A MODIFIED, AMENDED, OR AMENDED AND RESTATED PLAN, AND/OR (II) A MODIFICATION OR SUPPLEMENT TO THE DISCLOSURE STATEMENT OR A MODIFIED, AMENDED, OR AMENDED AND RESTATED DISCLOSURE STATEMENT FROM TIME TO TIME. REFERENCE IS MADE TO THE DISCLOSURE STATEMENT FOR A DISCUSSION OF VOTING INSTRUCTIONS, THE DEBTOR'S HISTORY, BUSINESS, AND ASSETS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE BANKRUPTCY CASE, THE PROCEDURES FOR VOTING ON THE PLAN, AND THE MEANS OF IMPLEMENTING AND FUNDING THIS PLAN. THE DISCLOSURE STATEMENT ALSO CONTAINS THE CASH FLOW PROJECTIONS REGARDING THE FUTURE PERFORMANCE OF THE DEBTOR'S FACILITY FOLLOWING THE EFFECTIVE DATE. ALL BENEFICIAL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THIS PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

AS TO ANY CONTESTED MATTERS, ADVERSARY PROCEEDINGS, OR OTHER ACTIONS OR THREATENED ACTIONS, THIS PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## INTRODUCTION

Senior Care Living VII, LLC, as the Debtor and Debtor in Possession in the Bankruptcy Case (the "**Plan Proponent**") proposes this Amended Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code dated as of September 11, 2023 (the "**Plan**," as more particularly defined below) for the liquidation of the Debtor's Assets after the Confirmation of the Plan and the resolution of the outstanding Claims against the Debtor pursuant to the provisions of Chapter 11 of the Bankruptcy Code, and request Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.  The Debtor is the Plan Proponent and the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

**In summary, but subject to more specific details provided herein, the Plan provides for distribution and payment of the remaining assets of the Debtor to creditors and a settlement between and amongst the Debtor, Mark C. Bouldin ("Bouldin") and the Bond Trustee (the "Settlement").**

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims. The Disclosure Statement was conditionally approved by the Bankruptcy Court in the Disclosure Statement Approval Order, which is being distributed simultaneously with the Plan to all parties whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtor's history, business, and Assets; (b) a summary of significant events that have occurred to date in the Bankruptcy Case; (c) a summary of the means of implementing and funding the Plan; and (d) the procedures for voting on the Plan.  Other than the Disclosure Statement and any Exhibits and schedules and documents attached thereto or referenced therein, no materials have been approved by the Plan Proponent for use in soliciting acceptances or rejections of the Plan. ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

THE PLAN HAS BEEN APPROVED BY THE PLAN PROPONENT. IN THE OPINION OF THE PLAN PROPONENT, THE TREATMENT OF CLAIMS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR.  ACCORDINGLY, THE PLAN PROPONENT BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS, AND RECOMMENDS THAT CREDITORS VOTE TO ACCEPT THE PLAN.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those provisions on modifications to the Plan set forth in Article 13 hereof, the Plan Proponent expressly reserves the right to alter, further amend, further modify, revoke or withdraw the Plan, one or more times, prior to the Plan's substantial consummation.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THE PLAN AND IN THE DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR ARE A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT TO ANY OTHER PARTY. ANY CASH FLOW PROJECTIONS REGARDING THE FUTURE PERFORMANCE OF THE DEBTOR'S FACILITY FOLLOWING THE EFFECTIVE DATE HAVE BEEN PROVIDED TO THE PLAN PROPONENT BY THE DEBTOR'S MANAGEMENT COMPANY, VALIDUS. NONE OF THE ATTORNEYS, ACCOUNTANTS, OR OTHER PROFESSIONALS RETAINED BY THE PLAN PROPONENT MAKES ANY REPRESENTATIONS CONCERNING SUCH INFORMATION OR PROJECTIONS.

THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. ALL PERSONS OR ENTITIES SHOULD EVALUATE THE PLAN AND THE DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

# Article 1
## DEFINED TERMS

As used in the Plan, the following terms, which appear in this Plan as capitalized terms, will have the meanings set forth below:

**1.01** All of the definitions set forth in Section 101 of the Bankruptcy Code are incorporated herein as though set forth herein in their entirety. If a defined term contained herein is inconsistent with the definition of such defined term set forth in Section 101 of the Bankruptcy Code, the defined term set forth herein controls over the definition of such defined term set forth in Section 101 of the Bankruptcy Code.

**1.02** [Intentionally Omitted].

**1.03** *"Administrative Expense"* means—

(a) any cost or expense of administration of the Bankruptcy Case that is allowed under Section 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such Administrative Expense files an application or other Bankruptcy Court-approved pleading seeking such expense in the Bankruptcy Case on or before the applicable Administrative Expense Claim Bar Date, including—

(1) any actual and necessary costs and expenses of preserving the Estates or operating the businesses of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date;

(2) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in

4

Possession in the ordinary course of their businesses (excluding any Postpetition cost, indebtedness or contractual obligation assumed in connection with the Assigned Contracts);

(3)    any Claim granted administrative expense priority status by a Final Order of the Bankruptcy Court;

(4)    any Claim by a Governmental Unit for non-ad valorem taxes that are assessed *in personam* (and for interest and/or penalties related to such taxes) for any tax year or period, to the extent such Claim accrues Postpetition; and

(5)    compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court);

(b)    any Superpriority Claim; and

(c)    any and all other costs or expenses of administration of the Bankruptcy Case that are allowed by a Final Order of the Bankruptcy Court.

The terms "Administrative Expense" and "Administrative Expense Claim" shall not include any Priority Tax Claim, any Disallowed Claim, or any of the Claims in Classes 1 through 13. In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Unit for taxes (and for interest and/or penalties related, to such taxes) due from the Debtor for any Postpetition tax year or period).

**1.04**    *"Administrative Expense Claim"* means any Claim for the payment of an Administrative Expense. The terms "Administrative Expense(s)" and "Administrative Expense Claim(s)" are used interchangeably in this Plan.

**1.05**    *"Administrative Expense Claim Bar Date"* means, subject to Article 3.07 of the Plan, the date ordered by the Bankruptcy Court or the date established by the Bankruptcy Rules as the last day for filing an application or other Bankruptcy Court-approved request for allowance of an Administrative Expense. In the case of an Administrative Expense arising after the date ordered by the Bankruptcy Court or established by the Bankruptcy Rules as the last day for filing an application or other Bankruptcy Court-approved request for allowance of an Administrative Expense, the Administrative Expense Claim Bar Date will be the Effective Date.

**1.06**    *"Affiliate"* means, with respect to any Person (other than the Debtor), (i) any other Person which, directly or indirectly, is in control of, is controlled by, or is under common control with such Person, (ii) any other Person that, directly or indirectly, owns or controls, whether beneficially, or as trustee, guardian or other fiduciary, twenty percent (20%) or more of the equity interests having ordinary voting power in the election of directors of such Person, or (iii) any other Person who is a director, officer, joint venturer or partner (a) of such Person, (b) of any subsidiary of such Person, or (c) of any Person described in clause (i) above. For the purposes of this definition, control of a Person shall mean the power (direct or indirect) to direct or cause the direction of the management and policies of such Person whether through ownership of voting securities, by contract or otherwise. When used in this Plan as relating to the Debtor, the term "Affiliate" has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

**1.07** ***"Allowed Amount"*** means the dollar amount in which a Claim is Allowed.

**1.08** ***"Allowed Claim"*** means a Claim or that portion of a Claim that is not a Disputed Claim or a Disallowed Claim and (i) (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date, or, by order of the Bankruptcy Court, was not required to be filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date, but which has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent, and (ii) as to which either (x) no objection to the allowance thereof has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) any objection made has been determined and the Claim has been allowed by a Final Order (but only to the extent so allowed). "Allowed Claim" also includes (i) a Disputed Claim which was not objected to prior to the Claims Objection Deadline and (ii) a Claim that is allowed by the Bankruptcy Court (x) in any contract, instrument, or other agreement or document entered into in connection with the Plan; (y) in a Final Order; or (z) pursuant to the terms of the Plan. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, Allowed Secured Tax Claim, and Allowed Unsecured Claim), has a corresponding meaning.

**1.10** ***"Allowed Class . . . Claim"*** means an Allowed Claim in the particular Class described.

**1.11** ***"Allowed Equity Interest"*** means an Allowed Equity Interest in the particular Class described.

**1.14** ***"Assets"*** means any property or asset of any kind in which the Debtor or the Estate holds an interest, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located, and any interest of any kind in such property or asset.

**1.20** ***"Ballot"*** means the ballot accompanying the Disclosure Statement and/or this Plan upon which Holders of Impaired Claims and Impaired Equity Interests entitled to vote on the Plan will indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

**1.21** ***"Bankruptcy Case"*** means, the case of the Debtor currently pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, which case was commenced by the Debtor on the Petition Date and presently bears Case No. 8:22-bk-00103-CED.

**1.22** ***"Bankruptcy Code"*** means Title 11 of the United States Code (11 U.S.C. §§l0l *et seq.),* as in effect on the Petition Date, together with all amendments and modifications to the Bankruptcy Code that were subsequently made applicable to the Bankruptcy Case.

**1.23** ***"Bankruptcy Counsel"*** means Johnson Pope Bokor Ruppel & Burns, LLP, in its Bankruptcy Court-approved capacity as Chapter 11 bankruptcy counsel to the Debtor in Possession.

**1.24** ***"Bankruptcy Court"*** means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Bankruptcy Case.

**1.25** ***"Bankruptcy Rules"*** means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (M.D. Fla. L.B.R.), as in effect on the Petition Date, together with all amendments and modifications to such Rules that were subsequently made applicable to the Bankruptcy Case.

**1.26** *"Bar Date"* means March 31, 2022, the bar date established by the Bankruptcy Court as the last day for filing Proofs of Claim against the Debtor, excluding (i) a Prepetition Claim of a Governmental Unit, for which a Proof of Claim must be filed with the Bankruptcy Court by the Governmental Unit Bar Date, (ii) an Administrative Expense Claim, for which a request for payment of an Administrative Expense must be filed with the Bankruptcy Court by the Administrative Expense Claim Bar Date, (iii) a Claim for which a bar date may have been otherwise established by a Final Order of the Bankruptcy Court, for which a Proof of Claim must be filed with the Bankruptcy Court by the date set forth in such Final Order, and (iv) a Claim with respect to an executory contract or unexpired lease that is rejected pursuant to (a) the Plan (as to which the bar date shall be as set forth in Article 7.07 hereof) or (b) a Final Order of the Bankruptcy Court (as to which the bar date shall be as set forth in such Final Order).

**1.27** **"Bonds"** means the following series of bonds issued by the Woodloch Health Facilities Development Corporation for the benefit of the Debtor: (i) $35,925,000 Senior Housing Revenue Bonds (Inspired Living at Lewisville Project) Series 2016A-1; (ii) $2,555,000 Taxable Senior Housing Revenue Bonds (Inspired Living at Lewisville Project) Series 2016A-2; (iii) $1,915,000 Taxable Senior Housing Revenue Bonds (Inspired Living at Lewisville Project) Series 2016A-3; and (iv) $4,990,000 Subordinate Senior Housing Revenue Bonds (Inspired Living at Lewisville Project) Series 2016B.

**1.28** **"Bond Claim"** shall have the meaning ascribed to such in section 8.05 herein.

**1.29** **"Bond Documents"** means any and all documents evidencing or securing the Bonds.

**1.29** **"Bond Trustee"** means UMB Bank, N.A., in its capacity as (i) successor master trustee under that certain Master Trust Indenture, Deed of Trust and Security Agreement, dated as of November 1, 2016, by and between the Debtor and Branch Banking and Trust Company, as the prior master trustee, and (ii) successor bond trustee Trust Indenture and Security Agreement, dated as of November 1, 2016, by and between the Issuer and Branch Banking and Trust Company, as the prior bond trustee.

**1.29** *"Business Day"* means any day other than (i) a Saturday, a Sunday, or a "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)), or (ii) a day on which commercial banks in Tampa, Florida are authorized or required to close by law.

**1.31** *"Cash"* means cash, cash equivalents, and other readily marketable direct obligations of the United States of America, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a Distribution under the Plan, the term "Cash" means lawful currency of the United States of America, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from the Debtor drawn on a domestic bank.

**1.33** *"Causes of Action"* means any and all of the Estate's and the Debtor's actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, including all actions and rights to recover transfers voidable or recoverable under Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including claims of the type referred to in the Disclosure Statement or in Article 0 of the Plan; provided, however, that, when used in the Plan, the term "Causes of Action" does not include any claims, demands, obligations, suits,

judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the Plan, the Confirmation Order, or other order of the Bankruptcy Court.  When used in the Plan, the term "Causes of Action" will also specifically include any claims, demands, rights, and causes of action that may only be asserted by a Person other than the Debtor (including the Holder of a Claim) on a derivative or other basis.

     **1.37**    *"Claim"* has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code.  Notwithstanding anything to the contrary contained in the Plan, when used in the Plan, the term "Claim" will be given the broadest possible meaning permitted by applicable law and will include all manner and type of claim, whenever and wherever such claim may arise. As used in the Plan, the term "Claim" also includes a Claim against any Affiliate, the Holder of which holds or believes it holds a Claim against the Debtor arising from or related to the same or similar facts and circumstances surrounding the claim against the Affiliate.

     **1.38**    *"Claims Objection Deadline"* means the deadline by which the Debtor, or other appropriate party in interest shall object to Claims, and shall be sixty (60) days after the Effective Date, unless extended by an order of the Bankruptcy Court; provided, however, this deadline shall not apply to the deadline for objecting to Encumbrances on the Debtor's real property as set forth in the Sale Orders.

     **1.39**    *"Class"* means a category of Claims or Equity Interests classified together as described in Article 4 of the Plan.

     **1.40**    *"Clerk"* means the Clerk of the Bankruptcy Court.

     **1.41**    *"Clerk's Office"* means the Office of the Clerk of the Bankruptcy Court located at the Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, 5th Floor, Tampa, Florida 33602.

     **1.46**    *"Confirmation"* or *"Confirmation of the Plan"* means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

     **1.47**    *"Confirmation Date"* means the date on which the Confirmation Order is entered on the Docket pursuant to Bankruptcy Rule 5003(a).

     **1.48**    *"Confirmation Hearing"* means the hearing(s) which will be held before the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code in which the Debtor will seek Confirmation of the Plan, as such hearing(s) may be continued from time to time.

     **1.49**    *"Confirmation Order"* means the order of the Bankruptcy Court in the Bankruptcy Case confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, which order will be in form and substance reasonably satisfactory to the Debtor, and will include any amendments, supplements or modifications thereto made with the consent of the Debtor.

     **1.56**    *"Creditor"* means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Creditors with Administrative Expenses, Priority Tax Claims, Priority Claims, Secured Claims, Secured Tax Claims, and Unsecured Claims.

     **1.57**    *"Creditor Fund"* or *"Bouldin Payment"* means the amount of $200,000 to be paid by Bouldin pursuant to the Settlement for the purpose of paying Allowed Unsecured Claims.

     **1.64**    *"Debt"* has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

     **1.66**    *"Debtor"* means Senior Care Living VII, LLC.

     **1.67**    *"Debtor in Possession"* means Senior Care Living VII, LLC, as debtor in possession in the Bankruptcy Case.

**1.75** *"Disallowed Claim"* means any Claim that has been disallowed by an order of the Bankruptcy Court that has not been stayed pending appeal.

**1.77** *"Disclosure Statement"* means the Disclosure Statement for Amended Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code dated as of September ___, 2023 [Doc No. ___], including all Exhibits, appendices, and schedules attached thereto, as submitted and filed by the Debtor pursuant to Section 1125 of the Bankruptcy Code in respect of the Bankruptcy Case and conditionally approved by the Bankruptcy Court in the Disclosure Statement Approval Order, as such Disclosure Statement may be amended, supplemented, modified, or amended and restated from time to time.

**1.78** *"Disclosure Statement Approval Order"* means the Order Conditionally Approving Disclosure Statement, Fixing Time to File Objections to the Disclosure Statement, Fixing Time to File Applications for Administrative Expenses, Setting Final Hearing and Hearing on Confirmation of the Plan entered by the Bankruptcy Court.

**1.79** *"Disputed Claim"* means any Claim or portion thereof (other than a Disallowed Claim) that is not an Allowed Claim and (i) (a) as to which a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules, and, (ii) as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court and any such objection has not been (x) withdrawn, (y) overruled by an order of the Bankruptcy Court, or (z) sustained by an order of the Bankruptcy Court.  In addition to the foregoing, a Disputed Claim shall also mean a Claim that is not an Allowed Claim, whether or not an objection has been or may be timely filed, if (i) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (ii) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (iii) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (iv) no corresponding Claim has been scheduled in the Schedules, or (v) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.  To the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, such Claim shall be a Disputed Claim only to the extent of the amount specified in the Proof of Claim which is in excess of the amount of the Claim as scheduled. A Disputed Claim which has not been objected to prior to the Claims Objection Deadline shall cease being a Disputed Claim and shall become an Allowed Claim. "Disputed," when used as an adjective herein (such as Disputed Administrative Expense Claim, Disputed Priority Tax Claim, Disputed Priority Claim, Disputed Secured Claim, Disputed Secured Tax Claim, and Disputed Unsecured Claim), has a corresponding meaning.

**1.80** *"Distribution"* means a distribution or disbursement in Cash to a Creditor on account of an Allowed Claim (or to the Holder of an Allowed Equity Interest) pursuant to the terms of the Plan.

**1.81** *"Distribution Date"* means the date or dates for any Distribution to a Holder of an Allowed Claim as provided in the Plan, unless such date or dates have been otherwise established by an order of the Bankruptcy Court.

**1.82** *"Doc. No."* means the number of the referenced document reflected on the Docket.

**1.83** *"Docket"* means the docket in the Bankruptcy Case maintained by the Clerk.

**1.84** *"Effective Date"* means, and shall occur on, the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date contained in Article 10.02 of the Plan have been satisfied or waived by the Plan Proponent.

**1.85** *"Effective Date Notice"* has the meaning ascribed to such term in Article 10.04 of the Plan.

**1.86** *"Entity"* has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

**1.89** *"Equity Interests"* means, collectively, the membership interests in the Debtor.

**1.90** *"Estate"* means the estate created for the Debtor under Section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Case.

**1.91** *"Estimation Hearing"* means a hearing for the estimation of Claims under Section 502(e) of the Bankruptcy Code.

**1.92** *"Excess Real Estate"* means the approximately 4.01 +/- acres located on along West Round Grove Road adjacent to the Debtor's ALF

**1.96** *"Exculpated Parties"* has the meaning ascribed to such term in Article 11.01 of the Plan.

**1.97** *"Exhibit"* means any exhibit annexed to the Plan or to the Disclosure Statement, as the context requires.

**1.99** *"Facility"* means the Adult Living Facility owned and operated by the Debtor known as Inspired Living at Lewisville.

**1.100** *"Final Decree"* means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

**1.101** *"Final Decree Date"* means the date on which the Final Decree is entered on the Docket.

**1.102** *"Final Order"* means an order, judgment, ruling, or other decree (or any revision, modification, or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court that has jurisdiction over any proceeding in connection with the Bankruptcy Case for the purpose of such proceeding, which order, judgment, ruling, or other decree has not been reversed, vacated, stayed, modified, or amended and as to which—

(i) no appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has been taken and is pending and the time for the filing of such appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has expired, or

(ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending.

**1.112** *"Governmental Unit"* has the meaning ascribed to such term in Section 101(27) of the Bankruptcy Code.

**1.113** *"Governmental Unit Bar Date"* means July 11, 2022, the date established by Section 502(a)(9) of the Bankruptcy Code as the last day for a Governmental Unit to file a Proof of Claim against the Debtor in the Bankruptcy Case.

**1.115** *"Holder"* means as to any Claim -—

(a)    the owner or Holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim;

(b)    if no Proof of Claim has been filed with respect to such Claim, the owner or Holder of such Claim as shown on the Schedules or books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court; or

(c)    the transferee of such Claim, if the owner or Holder of such Claim has transferred the Claim to a third party and filed notice of the transfer and transferee with the Clerk as required by Bankruptcy Rule 3001(e).

**1.116**    *"Impaired"* means, when used with reference to a Claim, a Claim that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.118**    *"Initial Distributions"* has the meaning ascribed to such term in Article 9.01 of the Plan.

**1.119**    **"Issuer"** means Woodloch Health Facilities Development Corporation.

**1.121**    *"Liabilities"* means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now, or hereafter owing, arising, due, or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor or any predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any predecessor, successor, or assign thereof, any Assets of the Debtor, the business or operations of the Debtor, the Bankruptcy Case, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, as used in the Plan, the term "Liabilities" does not include any obligations of the Debtor expressly set forth in the Plan.

**1.122**    *"Lien"* means, with respect to any Asset, all mortgages, claims (including all Claims), leases, options, hypothecations or similar restrictions, liens, pledges, security interests, and charging orders and any other encumbrance, right or interest of any kind or character, whether vested or contingent, that evidences or secures a debt or payment obligation or adverse ownership interest in the Asset in question, whether imposed by agreement, understanding, law, equity or otherwise, or liens, interests or encumbrances both now existing or hereafter arising which would encumber such Asset arising under any agreement binding on either Debtor or its Assets, and shall include "liens" as such term is defined in Section 101(37) of the Bankruptcy Code.

**1.131**    *"Notice Parties"* means the Debtor, Bankruptcy Counsel, the United States Trustee, and all parties listed on the Local Rule 1007-2 Parties in Interest List (as such list is maintained in accordance with the Local Rules of the Bankruptcy Court).

**1.136**    *"Person"* means any person, individual, sole proprietorship, corporation, association, partnership, limited liability company, joint venture, trust, organization, unincorporated organization, institution, joint stock company, business, government, governmental agency or political subdivision thereof, Governmental Unit within the meaning of Section 101(41) of the Bankruptcy Code, or any other entity or institution of any type

whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

**1.137** *"Petition Date"* means January 10, 2022, the date on which the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

**1.140** *"Plan"*, *"the Plan"*, or *"this Plan"* means this Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code dated as of January 17, 2023 (together with all Exhibits to the Plan), as the Plan may be amended, supplemented, modified, or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

**1.141** *"Plan Documents"* means the proposed form of all documents necessary to consummate the transactions contemplated under the Plan to occur on the Effective Date including

**1.143** *"Postpetition"* means arising or accruing on or after the Petition Date and before the Effective Date.

**1.144** *"Prepetition"* means arising or accruing prior to the Petition Date.

**1.145** *"Priority Claim"* means a Claim that is entitled to a priority in payment pursuant to subparagraphs (3) through (7) of Section 507(a) of the Bankruptcy Code and that is not an Administrative Expense, Priority Tax Claim, Secured Claim, Secured Tax Claim, or Unsecured Claim.

**1.146** *"Priority Tax Claim"* means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense, Priority Claim, Secured Claim, Secured Tax Claim, or Unsecured Claim.

**1.147** *"Pro Rata Share"* means, with respect to any Distribution to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which will be the amount of such Holder's Allowed Claim and the denominator of which will be the sum of all Allowed Claims and all Reserved Claims in such Class and, if applicable, other Classes, all determined as of the applicable Distribution Date. The term "Pro Rata Share" will also be applied in respect of Administrative Expenses and Priority Tax Claims as the context requires in the Plan.

**1.148** *"Professional"* means any professional employed in the Bankruptcy Case with the approval of the Bankruptcy Court pursuant to Section 327 or 1103 of the Bankruptcy Code.

**1.149** **"Professional Claim"** means a Claim of a Professional for compensation and/or reimbursement of expenses incurred by such Professional through and including the Effective Date.

**1.149** *"Proof of Claim"* means a proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rule 3001, 3002, or 3003.

**1.150** **"Released Parties"** means (i) the Issuer, (ii) the Bond Trustee, (iii) the holders of the Bonds and (vii) with respect to each of the foregoing Entities in clauses (i) through (iii), such Entity and its current and former predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, managers, employees, attorneys, advisors, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals.

**1.151** **"Releasing Parties"** means (i) each holder of a Claim who has not chosen, by marking the appropriate box on the Ballot and/or Opt Out Form, as appropriate, to opt out of the

"Releases by Holders of Claims" provided for in Section 11.01(b) of this Plan, and (ii) the Bond Trustee and holders of the Bonds solely to the extent set forth in Section 11.01(b) of this Plan.

**1.158** *"Reserved Claims"* means all Disputed Claims as of the applicable determination date (i) in the full amount listed in the Schedules, or (ii) if a Proof of Claim was timely filed with respect to such Claim, in the face amount of such Proof of Claim, or (iii) if the Claim has been estimated by the Bankruptcy Court for the purpose of allowance pursuant to Section 502(c) of the Bankruptcy Code, in the estimated amount. Unless an order of the Bankruptcy Court estimating a Claim provides otherwise, the amount so estimated will apply both for voting purposes and for purposes of computing Reserved Claims. As used in the Plan, the term "Reserved Claims" will not include any Disallowed Claims.

**1.159** *"Sale Orders*" means, collectively, the Orders entered by the Bankruptcy Court on December 27, 2022, approving the sales of the Debtor's ALF and Excess Real Estate (Doc. Nos. 250, 251).

**1.171** *"Schedules"* means, collectively, the Schedules and Statements of Financial Affairs filed by the Debtor in the Bankruptcy Case pursuant to Bankruptcy Rule 1007, as amended or supplemented from time to time.

**1.173** *"Secured Claim"* means any Claim that is secured in whole or in part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law. But only to the extent of the Estates' interest in the value of the Assets securing any such Claim. Except as otherwise provided in the Plan, if the value of a Creditor's interest in the Estate's interest in the Assets securing such Claim or the amount subject to setoff is less than the amount of the Allowed Claim, the resulting deficiency constitutes an Unsecured Claim.

**1.174** *"Secured Creditor"* means any Creditor holding a Secured Claim.

**1.175** *"Secured Tax Claim"* means a Secured Claim of a Governmental Unit for Prepetition taxes, including any assignee or subrogee for such Claim.

**1.176** *"Settlement Order"* means the Order Granting Debtor's Amended Motion for Order Approving Compromise with UMB Bank, N.A., as Trustee (Doc. ____).

**1.181** *"Superpriority Claim"* means any Claim created by a Final Order of the Bankruptcy Court providing for a priority senior to that provided in Section 507(a)(1) of the Bankruptcy Code, including any such Claims granted under Sections 364(c)(1) and 365 of the Bankruptcy Code.

**1.183** *"Unimpaired"* means that a Claim is not Impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.186** *"United States Trustee"* means the United States Trustee for Region 21.

**1.187** *"Unsecured Claim"* means any Claim that is not an Administrative Expense, Priority Tax Claim, Priority Claim, Secured Tax Claim, or Secured Claim, including (i) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, (ii) any portion of a Claim to the extent the value of the Holder's interest in the Estate's interest in the Assets securing such Claim is less than the amount of the Claim, or any "deficiency" claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, and (iii) any Claim designated as an Unsecured Claim elsewhere in the Plan.

**1.188** *"Unsecured Creditor"* means any Creditor holding an Unsecured Claim.

**1.190**    ***"Voting Deadline"*** means the last day to file, with the Bankruptcy Court, a Ballot accepting or rejecting the Plan as fixed by an order of the Bankruptcy Court.

**1.191**    ***"Voting Instructions"*** means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "Voting Instructions" and in the Ballot.

# Article 2
## CONTROLLING LAW AND RULES OF CONSTRUCTION

**2.01**    ***Reference to Bankruptcy Code and Bankruptcy Rules.***  Any capitalized term used in the Plan that is not defined in the Plan, but which is defined in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.  In the instance of a conflict or ambiguity, the definitions in the Plan control over the definitions set forth in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**2.02**    ***Rules of Construction.***  For purposes of the Plan, the following rules of construction will apply:

(a)    Whenever from the context it is appropriate, (i) each term, whether stated in the singular or the plural, will include both the singular and the plural, and (ii) the gender of all words herein will include the masculine, feminine and neuter.

(b)    Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document will be substantially in such form or substantially on such terms and conditions.

(c)    Any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented.

(d)    If the description in the Plan of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit will control.

(e)    Unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan.

(f)    Unless the context requires otherwise, the words "herein", "hereunder", "hereof", and "hereto" refer to the Plan in its entirety rather than to a particular article or section or subsection of the Plan.

(g)    Any phrase containing the term "include" or "including" will mean including without limitation.

(h)    All of the Exhibits attached to this Plan will be deemed incorporated herein by such reference and made a part hereof for all purposes.

        (i)        Any reference to a Person or an Entity as a Holder of a Claim or Equity Interest includes such Person's or Entity's heirs, personal representatives, successors and assigns.

# Article 3
## TREATMENT OF ADMINISTRATIVE
## EXPENSES AND PRIORITY TAX CLAIMS

**3.01** *Nonclassification.* In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expenses and Priority Tax Claims is set forth in this Article 3.

**3.02** *Administrative Expenses and Professional Claims.* Except as otherwise provided in Articles 3.03 through 3.07 below, each Holder of an Allowed Administrative Expense and Professional Claim shall receive on the Effective Date an amount, in Cash, equal to the Allowed Amount of its Administrative Expense or Professional Claim less any portion of such Allowed Administrative Expense or Professional Claim that has already been satisfied. As set forth below, Bouldin shall be personally liable for the payment of any Professional Claims related to services rendered and reimbursement of expenses incurred in the Chapter 11 Case as of July 1, 2023 through the Effective Date.

**3.04** *Fees and Charges.* All fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930, through the Confirmation Date, as determined by the Bankruptcy Court in the Confirmation Order, will be paid no later than thirty (30) days after the Effective Date. Such fees and charges will accrue post-Confirmation and will be paid on disbursements made through the closing of the Bankruptcy Case.

**3.05** *Ordinary Course Liabilities.* All Allowed Administrative Expenses with respect to Liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid by the Reorganized Debtor in the ordinary course of business in accordance with contract terms or as may be otherwise agreed upon by both the Holder of such Allowed Administrative Expense and the Debtor.

**3.07** *Applications for Allowance of Administrative Expenses.* Excluding the Debtor's Professionals, all Holders of Administrative Expenses (including Holders of any Claims for non-ad valorem Postpetition federal, state, or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claim Bar Date will be forever barred from asserting such Administrative Expense against the Debtor, or any of its respective assets or properties.

**3.08** *Priority Tax Claims.* Each Holder of an Allowed Priority Tax Claim shall be paid (a) on the Effective Date, an amount, in Cash, equal to the Allowed Amount of its Priority Tax Claim, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Debtor.

# ARTICLE 4
## DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

**4.01    *In General.*** Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Equity Interests.  A Claim is classified (a) in a particular Class of Claims only to the extent the Claim qualifies within the description of that Class and (b) in a different Class to the extent the Claim qualifies within the description of that different Class. Unless otherwise expressly stated, the Classes of Claims set forth below include all Claims against each of the Debtor that qualify within the description of that Class.

**4.02    *Classes.*** For purposes of this Plan, Claims and Equity Interests are classified as follows:

> (a)    Class 1 consists of all Allowed Secured Claims of the Bond Trustee relating to the Series A and B Bonds/Notes.
> (b)    Class 2 consists of all Allowed Unsecured Claims.
> (c)    Class 3 consists of all Allowed Equity Interests.

# Article 5
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**5.01    *In General.*** Claims and Equity Interests will be treated under the Plan in the manner set forth in this Article 5.  Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan will be in full and final satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Claims (of any nature whatsoever) and Allowed Equity Interests.

**5.02    *Unclassified Claims.*** Each Holder of an Allowed Administrative Expense or an Allowed Priority Tax Claim will receive the treatment set forth in Article 3 of the Plan.

**5.03    *Classified Claims*.** Pursuant to Section 1122 of the Bankruptcy Code, Claims and Interests shall be treated as follows under this Plan:

| Class | Description | Insider | Impairment | Treatment |
|-------|-------------|---------|------------|-----------|
| 1 | Bond Trustee | No | Impaired | The Bond Trustee is the only holder of an allowed secured claim against the Debtor and has a valid and enforceable lien on all of the Debtor's assets, including all (i) |

16

| | | | | cash held by or in the name of the Debtor, (ii) accounts receivable, and (iii) proceeds thereof (collectively, the "Remaining Collateral"), which has an approximate value of no less than $827,290. The Bond Trustee shall receive the Remaining Collateral on the Effective Date, less the amount necessary to pay necessary U.S. Trustee fees. |
|---|---|---|---|---|
| 2 | Allowed Unsecured Claims | No | Impaired | Each holder of an Allowed Unsecured Claim shall receive its *pro rata* share of the Bouldin Payment (the "Class Two Distribution"). |
| 3 | Equity Interest Holders | Yes | Impaired | Holders of equity interests in the Debtor shall not receive any payments under the Plan, and the stock in the Debtor shall be canceled and extinguished. |

# Article 6
## ACCEPTANCE OR REJECTION OF THE PLAN

**6.01    *Each Impaired Class Entitled to Vote Separately.*** The Holders of Claims in each Impaired Class of Claims will be entitled to vote separately to accept or reject the Plan.

**6.02    *Acceptance by Impaired Classes.*** Classes 1-3 are Impaired under the Plan, and Holders of Claims in such Classes are entitled to vote to accept or reject the Plan. Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims will have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. Pursuant to Section 1126(d) of the Bankruptcy Code, an Impaired Class of Equity Interests will have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

**6.03    *Presumed Acceptance of Plan by Unimpaired Classes.*** No Classes are Unimpaired. Pursuant to Section 1126(f) of the Bankruptcy Code, each such Class and the

Holders of Claims and Equity Interests in such Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan.

**6.04    *Impairment Controversies.*** If a controversy arises as to whether any Claim or Equity Interest, or any Class of Claims or Class of Equity Interests, is Impaired under the Plan, such Claim, Equity Interest or Class shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Equity Interest, or a particular Class of Claims or Class of Equity Interests, under the Plan.

# Article 7
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01    *Assumption and Assignment of Executory Contracts.*** The only Assumed Contracts are those that were assigned to Phorcys Asset Management, LLC, or its assigns, under the Phorcys Asset Purchase Agreement. Those contracts were already assumed and assigned in connection with the sale of the Debtor's ALF property.

**7.02    *Rejection of Other Executory Contracts and Unexpired Leases.*** All other executory contracts and unexpired leases that exist between the Debtor and another Person or Entity and that (a) are not Assumed Contracts, or (b) have not been expressly rejected or assumed by the Debtor with Bankruptcy Court approval on or before the Effective Date, shall be deemed rejected by the Debtor as of the Effective Date (the "**Rejected Contracts**").

**7.06    *Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases and Adequate Assurance of Future Performance of Assumed Contracts.*** Entry of the Confirmation Order shall constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of any executory contracts and unexpired leases rejected pursuant to Articles 7.02 hereof.

# ARTICLE 8
## MEANS OF IMPLEMENTATION OF THE PLAN

**8.01    *General Overview of the Plan.*** The Plan provides for the distribution of the Remaining Collateral to the Bond Trustee and the monies in the Creditor Fund to Holders of Allowed Unsecured Claims.

**8.02    *Non-vesting of All Assets of the Estate.*** All Assets of the Estate (including the Causes of Action) and any interest in property of the Debtor or the Estate shall not vest in a Reorganized Debtor and shall remain property of the Estate until the Bankruptcy Case is closed.

**8.03    *The Settlement Order*.** The terms of the Settlement Order are incorporated herein by reference. To the extent there are any inconsistencies between the Settlement Order and the Plan, the Settlement Order shall control unless otherwise consented to in writing by the Bond Trustee.

**8.04    *The Bouldin Payment and Bouldin's Payment Obligations Under the Plan.*** In accordance with the Settlement Order, Bouldin (i) has made the Bouldin Payment, which shall be the sole source of funding to make distributions to holders of Allowed Unsecured Claims, and (ii) shall, as of July 1, 2023, be personally liable for the payment of any Allowed Administrative Expenses of any estate professional. For the avoidance of doubt, the Debtor shall not use property of the Estate to satisfy any costs, fees, or expenses of any estate professional that are unpaid as of or that become due after July 1, 2023.

**8.05    *Treatment of the Bond Trustee's Claim.*** As of the Petition Date, the Bond Trustee held an Allowed Claim against the Debtor in the total amount of $54,060,936.15 secured by a valid and enforceable first priority lien on all of the Debtor's assets (the "**Bond Claim**"). Pursuant to the *Order Granting Motion of UMB Bank, N.A., in its Capacity as Bond Trustee, for an Order Authorizing the Distribution of the Proceeds from the Sale of the Debtor's Assets* [Dkt. No. 382], the Bond Trustee received a payment of $23,671,132.06 from the proceeds from the sales approved by the Sale Orders. As a result of such distribution, the Bond Trustee's Allowed Claim was reduced to $30,389,804.09. In accordance with the Settlement Order, the Bond Trustee shall receive the following on account of its Allowed Claim:

- *Allowed Secured Claim*. The Bond Trustee is the sole Holder of an Allowed Secured Claim against the Debtor and such claim is secured by a valid first priority lien on and security interest in the Remaining Collateral. The Bond Trustee shall receive the Remaining Collateral on the Effective Date, the value of which shall be no less than $827,290.18.

- *Allowed Unsecured Claim*. The Bond Trustee is the Holder of an Allowed Unsecured Claim in the amount of $29,562,513.91. The Bond Trustee shall receive a *pro rata* distribution of the Creditor Fund based on its Allowed Unsecured Claim and shall receive a distribution of no less than $172,394.00 on account of its Allowed Unsecured Claim.

**8.04    *Continued Limited Liability Company Existence and Management of the Debtor Following the Effective Date.*** The Debtor will continue to exist as a Florida limited liability company, with all of the powers of a for-profit limited liability company under applicable law and pursuant to its operating agreement, articles of organization or other organizational documents in effect prior to the Effective Date, until such time as all distributions have been made under this Plan. As necessary, the Debtor will continue to be operated and managed by its manager(s) in accordance with its operating agreement, as amended.

**8.05    *Limited Liability Company Actions.*** All matters provided for under the Plan involving the limited liability company structure of the Debtor, or any limited liability company action to be taken by or required of the Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the members or managers of the Debtor.

**8.6    *Section 1146 Exemption.*** Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of or as contemplated by

the Plan, or the vesting, re-vesting, transfer or sale of any Assets of, by or in the Debtor or its Estate, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents or Governmental Units shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 8.07    *Pursuit of Causes of Action.*

(a)    On the Effective Date, Causes of Action shall vest in, and remain assets of, the Estate, except to the extent a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Plan, the Settlement, or by Order of the Bankruptcy Court. The Causes of Action may only be pursued by an Estate representative approved by the Court. The Plan Proponent is not currently in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Plan Proponent states that any party in interest that engaged in business or other transactions with the Debtor Prepetition or that received payments from the Debtor Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation. In this regard, notice is hereby given that the Causes of Action shall include any avoidance actions relating to preferential transfers and possible fraudulent transfers under various provisions of the Bankruptcy Code against various trade Creditors and other Prepetition Creditors.

(b)    No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION EXCEPT AS EXPRESSLY STATED, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE ESTATE. Creditors are advised that legal rights, claims and rights of action the Estate may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtor or the Estate to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Plan Proponent or does not possess or do not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, claims, and rights of action of the Debtor or the Estate, whether now known or unknown.

A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Plan Proponent to describe such Cause of Action with specificity in the Plan or the Disclosure Statement. Nothing in the Plan operates as a release of any of the Causes of Action, except as expressly provided otherwise.

**8.22** *Exclusivity Period.* The Plan Proponent retains the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the Effective Date.

**8.23** *Cancellation of Agreements, Security Interests, and Other Interests*. On the Effective Date, except to the extent otherwise specifically provided in the Plan, all notes, instruments, certificates, and other documents evidencing the Bonds, shall be cancelled and the obligations of the Debtor thereunder or in any way related thereto shall be discharged and the agents and Bond Trustee thereunder shall be automatically and fully discharged from all duties and obligations thereunder. All existing security interests and/or Liens and/or any other Secured Claims shall also be automatically released, discharged, terminated, and of no further force and effect as of the Effective Date. Notwithstanding the foregoing, following confirmation of the Plan or the occurrence of the Effective Date, any credit document or agreement that governs the rights of any Holder of a Bond Claim shall continue in effect for purposes of (1) allowing Holders of such Allowed Claims to receive distributions under the Plan; (2) allowing and preserving the rights of the agents or representative of Holders of such Claims to make distributions on account of such Allowed Claims, as provided in the Plan; (3) preserving all exculpations in favor of the Bond Trustee; (4) allowing the Bond Trustee to enforce any rights and obligations owed to it under the Plan or the Confirmation Order, including the ability of the Bond Trustee to be compensated for fees and reimbursed for expenses, including expenses of its professionals, to assert its charging lien, to enforce its indemnity and other rights and protections with respect to and pursuant to the Bond Documents; and (5) permitting the Bond Trustee to appear and be heard in the Chapter 11 Case, or in any proceeding in the Court or any other court.

# ARTICLE 9
## PROVISIONS GOVERNING DISTRIBUTIONS

**9.01** *Distributions.* Distributions under the Plan shall be made by the Debtor.

**9.02** *Determination of Claims.* This Section 9.02 shall not be applicable to the Bond Claims, which are deemed Allowed and treated in accordance with Section 8.05 of the Plan.

(a) Unless otherwise provided in an order of the Bankruptcy Court, the Plan Proponent shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate to judgment all objections to Claims. Except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than the Claims Objection Deadline, and the Confirmation Order shall contain appropriate language to that effect. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or

unexpired leases shall be filed on the later of (i) sixty (60) days following the Effective Date or (ii) the date 60 days after the Debtor receive actual notice of the filing of such Claim.

(b)     Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Plan Proponent effects service in any of the following manners: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (ii) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (iii) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim.

(c)     Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Bankruptcy Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and distribution. The Plan Proponent may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Plan Proponent previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Plan Proponent may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and distribution. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable

Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

**9.03    *Unclaimed Distributions.*** This Section 9.03 shall not be applicable to the Bond Claims, which are deemed Allowed and treated in accordance with Section 8.05 of the Plan.

(a)    If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder within sixty (60) days of the date such check was issued, then the Debtor shall provide written notice to such Holder stating that, unless such Holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

(b)    If a check for a Distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to the Debtor due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Debtor as to such check within thirty (30) days of the date such Distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

(c)    Any unclaimed Distribution as described above shall be property of the Debtor.

**9.04    *Transfer of Claim.*** In the event that the Holder of any Claim shall transfer such Claim on and after the Effective Date, such Holder shall immediately advise the Debtor in writing of such transfer and provide sufficient written evidence of such transfer. The Debtor shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Debtor shall have received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

**9.05    *One Distribution per Holder.*** If the Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of Distributions hereunder, and only one Distribution shall be made with respect to the single aggregated Claim.

**9.06    *Effect of Pre-Confirmation Distributions.*** Nothing in the Plan shall be deemed to entitle the Holder of a Claim that received, prior to the Effective Date, full or partial payment of such Holder's Claim, by way of settlement or otherwise, pursuant to an order of the

Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Plan.  All such full or partial payments shall be deemed to be payments made under the Plan for purposes of satisfying the obligations of the Debtor to such Holder under the Plan.

**9.07** *No Interest or Fees on Claims.*  Except as expressly stated in the Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition interest or the payment of Postpetition interest, penalties, attorney fees or late charges on account of such Allowed Claim for any purpose. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

# Article 10
## CONDITIONS PRECEDENT TO
## CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE

**10.01** *Condition Precedent to Confirmation of the Plan.*  The following are conditions precedent to Confirmation of the Plan: The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan.

**10.02** *Conditions Precedent to the Effective Date.*  The Plan shall not be considered consummated and the Effective Date shall not occur unless: (a) the Sale Proceeds have been distributed pursuant to an Order granting the Distribution Motion; and (b) the Confirmation Order has been entered.

**10.03** *Waiver.*  The Plan Proponent retains the right to waive any condition precedent to the Confirmation of the Plan or the Effective Date by filing a notice in the Bankruptcy Case. Any such waiver shall be effective immediately.

**10.04** *Notice of the Effective Date.*  Promptly following the satisfaction, or the waiver by the Plan Proponent, of all of the conditions set forth in Article 10.02, the Plan Proponent shall file a notice (the "**Effective Date Notice**") with the Bankruptcy Court designating the Effective Date.  The Debtor shall serve the Effective Date Notice on all of the Notice Parties.

# ARTICLE 11
## RELEASES; EXCULPATION FROM LIABILITY; AND GENERAL INJUNCTION

**11.01** *Releases.*

(a) *Releases by the Debtor*.  **PURSUANT TO BANKRUPTCY CODE SECTION 1123(B), AS OF THE EFFECTIVE DATE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE INVESTMENT AND SERVICE OF THE RELEASED PARTIES TO FACILITATE THE EXPEDITIOUS REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE RESTRUCTURING**

CONTEMPLATED BY THIS PLAN, THE RELEASED PARTIES ARE DEEMED RELEASED AND DISCHARGED BY THE DEBTORS AND THE ESTATE FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, SETOFFS, RECOUPMENTS, REMEDIES, ENFORCEMENT RIGHTS AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTOR, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT THE DEBTOR, THE ESTATE, OR THE RELEASED PARTIES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST, OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, ANY ACT, REPRESENTATION, OMISSION, TRANSACTION, AFFILIATION, EVENT OR OTHER CIRCUMSTANCE TAKING PLACE OR EXISTING ON OR BEFORE THE EFFECTIVE DATE (INCLUDING BEFORE THE PETITION DATE) IN CONNECTION WITH OR RELATED TO THE DEBTORS OR ITS ASSETS, OPERATIONS, FINANCES, PROPERTY AND ESTATES, THE CHAPTER 11 CASE OR THE NEGOTIATION, FORMULATION, OR PREPARATION OF THIS PLAN, THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS, OR THE SALE TRANSACTION (COLLECTIVELY, THE "DEBTOR RELEASED CLAIMS"). NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASE SET FORTH ABOVE DOES NOT RELEASE ANY PARTY WITH RESPECT TO ANY POST-EFFECTIVE DATE OBLIGATIONS UNDER THIS PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THIS PLAN FROM THOSE POST-EFFECTIVE DATE OBLIGATIONS.

(b)     *Releases by Holders of Claims.* AS OF THE EFFECTIVE DATE AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE OBLIGATIONS OF THE DEBTOR UNDER THE PLAN AND THE CONTRIBUTIONS OF THE RELEASED PARTIES TO FACILITATE AND IMPLEMENT THE PLAN, EACH RELEASING PARTY SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE DEBTOR, THE ESTATE, AND ALL OTHER RELEASED PARTIES FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, ENFORCEMENT RIGHTS, SETOFFS, RECOUPMENTS, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTOR, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT SUCH PERSON WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER

**INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF ANY OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, ANY ACT, REPRESENTATION, OMISSION, TRANSACTION, AFFILIATION, EVENT OR OTHER CIRCUMSTANCE TAKING PLACE OR EXISTING ON OR BEFORE THE EFFECTIVE DATE (INCLUDING BEFORE THE PETITION DATE) IN CONNECTION WITH OR RELATED TO THE DEBTORS, OR THEIR RESPECTIVE ASSETS, OPERATIONS, FINANCES, PROPERTY AND ESTATES, THE CHAPTER 11 CASE OR THE NEGOTIATION, FORMULATION, OR PREPARATION OF THIS PLAN, THE DISCLOSURE STATEMENT, ANY PLAN SUPPLEMENT OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS, OR THE SALE TRANSACTION (COLLECTIVELY, "CREDITOR RELEASED CLAIMS"), OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY OR A FORMER OFFICER OR DIRECTOR OF THE DEBTOR THAT CONSTITUTES WILLFUL MISCONDUCT (INCLUDING FRAUD) OR GROSS NEGLIGENCE.**

**NOTWITHSTANDING ANYTHING ELSE TO THE CONTRARY IN THIS PLAN, THE BOND TRUSTEE AND HOLDERS OF THE BONDS SHALL ALL BE RELEASING PARTIES SOLELY WITH RESPECT TO ANY AND ALL CLAIMS RELATING TO THE DEBTORS (OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION THAT CONSTITUTES WILLFUL MISCONDUCT (INCLUDING FRAUD) OR GROSS NEGLIGENCE).**

      **11.02**    *Limited Exculpation from Liability.*  The Debtor and its officers and Professionals (acting in such capacity), (collectively, the "Exculpated Parties") shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or Confirmation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Case, for the period on and after the Petition Date and through the Effective Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party or breach of any contract or any fiduciary duty. With respect to Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case. Any such claims shall be governed by the standard of care otherwise applicable to the standard of negligence claims outside of bankruptcy. The rights granted under this Article 11.01 are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under Section 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. This exculpation from liability provision is not intended to, and does not, release any Prepetition Causes of Action.

**11.02    *General Injunction.*** Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, Liability or Equity Interest shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such Claims, Debts, Liabilities or Equity Interests, other than actions brought to enforce any rights or obligations under the Plan: (a) commencing or continuing in any manner any action or other proceeding against the Debtor, its Assets or its Estate; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, its Assets or its Estate; (c) creating, perfecting or enforcing any Lien against the Debtor, its Assets or its Estate; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or its Estate; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor or its Estate, under the Plan and the documents executed in connection therewith. The Plan Proponent shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation.

**11.03    *No Liability for Tax Claims.*** Unless a taxing Governmental Unit has asserted a Claim against the Debtor before the Governmental Unit Bar Date or Administrative Expense Claim Bar Date established therefor, no Claim of such Governmental Unit shall be Allowed against the Debtor or its Estate, or any of the Plan Proponent's, officers, directors, managers, members, or agents, for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Plan Proponent, any of its Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period or (ii) an audit of any return for a period before the Petition Date.

# ARTICLE 12
## RETENTION OF JURISDICTION

**12.01    *General Retention.*** Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Bankruptcy Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Bankruptcy Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

**12.02    *Specific Purposes.*** In addition to the general retention of jurisdiction set forth in Article 12.01, after Confirmation of the Plan and until the Bankruptcy Case is closed, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case for the following specific purposes:

> (a)    to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any application for an

Administrative Expense Claim, and to determine any and all objections to the allowance or priority of Claims;

(b)     to determine any and all cases, controversies, suits or disputes arising under or relating to the Bankruptcy Case, the Plan or the Confirmation Order (including regarding the effect of any discharge, exculpation, limitation of liability, or injunction provisions provided for herein or affected hereby and regarding whether the conditions to the consummation and/or Effective Date of the Plan have been satisfied);

(c)     to determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under Sections 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the Bankruptcy Case; provided, however, that this retention of jurisdiction shall not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of Professionals after the Effective Date unless an objection to such fees and expenses has been made by the Plan Proponent;

(d)     to determine any and all motions pending as of the Effective Date (including pursuant to the Plan) for the rejection, assumption, or assignment of executory contracts or unexpired leases to which the Plan Proponent is a party or with respect to which the Debtor may be liable, and to determine the allowance of any Claims resulting from the rejection thereof or any Cure Claims;

(e)     to determine any and all motions, applications, adversary proceedings, contested or litigated matters, Causes of Action, and any other matters involving the Plan Proponent commenced in connection with, or arising during, the Bankruptcy Case and pending on the Effective Date, including approval of proposed settlements thereof;

(f)     to enforce, interpret and administer the terms and provisions of the Plan and the Sale Orders;

(g)     to modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

(h)     to consider and act on the compromise and settlement of any Claim against the Debtor or the Estate;

(i)     to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Disclosure Statement, the Plan, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does

not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

(j)    to enforce all orders, judgments, injunctions and rulings entered in connection with the Bankruptcy Case, including the Settlement Order and the Sale Orders;

(j)    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

(k)    to determine all questions and disputes regarding title to the Assets of the Debtor or its Estate;

(l)    to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtor arising on or prior to the Effective Date or arising on account of transactions contemplated by the Plan, including any matters, disputes, or proceedings related to homestead exemption liabilities;

(m)    to resolve any determinations which may be requested by the Plan Proponent of any unpaid or potential tax liability or any matters relating thereto under Sections 505 and 1146 of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the Effective Date;

(n)    to resolve any disputes concerning any exculpation of or limitation of liability as to a nondebtor hereunder or the injunction against acts, employment of process or actions against such nondebtor arising hereunder;

(o)    to determine any and all matters, disputes and proceedings relating to Causes of Action, whether arising before or after the Effective Date;

(p)    to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity or Governmental Unit with consummation, implementation or enforcement of the Plan, or the Confirmation Order;

(q)    to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(r)    to determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

(s)    to enter an order concluding and terminating the Bankruptcy Case.

**12.03    *Closing of the Bankruptcy Case.*** In addition to the retention of jurisdiction set forth in Articles 12.01 and 12.02, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case until closed and retain jurisdiction to enter an order reopening the Bankruptcy Case after it has been closed, if appropriate.

### ARTICLE 13
### MODIFICATION OF PLAN AND
### CONFIRMATION OVER OBJECTIONS

**13.01    *Modification of Plan.***

(a)    The Plan Proponent may, with the consent of the Bond Trustee, modify the Plan at any time prior to the entry of the Confirmation Order, provided that the Plan, as modified, and the Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rules requirements.

(b)    After the entry of the Confirmation Order, the Debtor may, with the consent of the Bond Trustee, modify the Plan to remedy any defect or omission herein, or to reconcile any inconsistencies between the Plan and the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (i) the Debtor obtain Bankruptcy Court approval for such modification, after notice to the Notice Parties and a hearing; and (ii) such modification does not materially adversely affect the interests, rights, or treatment of any Class of Claims under the Plan.

(c)    After the entry of the Confirmation Order and before substantial consummation of the Plan, the Debtor may, with the consent of the Bond Trustee, modify the Plan in a way that materially adversely affects the interests, rights, or treatment of a Class of Claims, provided that (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtor obtains Bankruptcy Court approval for such modification, after notice to the Notice Parties and a hearing; (iii) such modification is accepted by at least two-thirds in dollar amount, and more than one-half in number, of Allowed Claims actually voting in each Class adversely affected by such modification; and (iv) the Debtor complies with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

**13.02    *Confirmation Over Objections.*** If any Impaired Class of Claims votes against the Plan, the Plan Proponent requests, and shall be allowed, to modify the terms of the Plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting Distributions to all Classes at or below the level of the objecting Class, or reallocating such Distributions, until such Impaired senior Classes are paid in accordance with the absolute

priority rule of Section 1129(b) of the Bankruptcy Code. The Plan Proponent may make such modifications or amendments to the Plan and such modifications or amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice prior to the Confirmation Hearing. No such modifications shall require any resolicitation of acceptances as to the Plan by any Class of Claims unless the Bankruptcy Court shall require otherwise. Notwithstanding any provision of the Plan to the contrary, the Plan Proponent reserves any and all rights it may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

# ARTICLE 14
## MISCELLANEOUS PROVISIONS

**14.01    *No Admissions.*** The Plan provides for the resolution, settlement and compromise of Claims against and Equity Interests in the Debtor. Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Debtor as applicable in any manner prior to the Effective Date.

**14.02    *Revocation or Withdrawal of the Plan.*** The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Plan Proponent revoke or withdraw the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to (a) constitute a waiver or release of any Claims against, or Equity Interests in, the Debtor or any other Person, or (b) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

**14.03    *Standard for Approval of the Bankruptcy Court.*** In the event any of the matters described herein are brought for approval before the Bankruptcy Court, then any such approval shall mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 debtor in possession.

**14.04    *Further Assurances.*** The Plan Proponent agrees, and is hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements and instruments that may be necessary to carry out and implement the terms and conditions of the Plan.

**14.05    *Headings.*** The headings used in the Plan are for convenience and reference only and shall not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

**14.06    *Notices.*** All notices, requests, or other communications or documents in connection with, or required to be served by, the Plan shall be in writing and shall be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to (i) the Debtor, c/o Michael C. Markham, Johnson Pope Bokor Ruppel & Burns, LLP, 401 E. Jackson St., Suite 3100, Tampa, Florida 33602; and (ii) Mark C. Bouldin, 3665 East Bay Drive, Suite 204-429, Largo, FL 33771.

**14.07    *Governing Law.*** Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

**14.08** **_Limitation on Allowance._** No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim except as otherwise expressly specified in the Plan or as Allowed by a Final Order of the Bankruptcy Court.

**14.09** **_Estimated Claims._** To the extent any Claim is estimated for any purpose other than for voting on the Plan, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

**14.10** **_Consent to Jurisdiction._** Upon any default under the Plan, the Plan Proponent consents to the jurisdiction of the Bankruptcy Court and agrees that the Bankruptcy Court shall be the preferred forum for all proceedings relating to any such default. By accepting any Distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any Administrative Expense Claim, by voting on the Plan, by reason of being served with notice of the filing of the Bankruptcy Case or the Confirmation Hearing, or by entering an appearance in the Bankruptcy Case, all Creditors, Holders of Equity Interests, and other parties in interest, including Governmental Units and foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan Proponent, the Plan or the Bankruptcy Case, including the matters and purposes set forth in Article 12 hereof. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 12 hereof.

**14.11** **_Setoffs._** Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor may, but shall not be required to, set off against any Claim and any Distribution to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against the Holder of such Claim.

**14.12** **_Successors and Assigns._** The rights, benefits, duties and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

**14.13** **_Modification of Payment Terms._** The Plan Proponent reserves the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

**14.14** **_Entire Agreement._** The Plan sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents. No Person or Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by such Person or Entity in writing.

**14.15** **_Severability of Plan Provisions._** If, prior to Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Plan Proponent, shall have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and

provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term or provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

**14.16    *Confirmation Order and Plan Control.***  To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, unless otherwise expressly provided in the Plan or the Confirmation Order, the Confirmation Order and the Plan shall control over the Disclosure Statement and any such agreement.  The Confirmation Order (and any other Final Orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the Plan; provided, however, to the extent the Confirmation Order is inconsistent with the Plan, the Confirmation Order shall control over the Plan.

**14.17    *Computation of Time.***  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**14.18    *Substantial Consummation.***  The Plan shall be deemed to be substantially consummated within the meaning of Section 1101 of the Bankruptcy Code upon the closings of the sales and the commencement of Distributions.

**14.19    *No Liability for Solicitation.***  Pursuant to Section 1125(e) of the Bankruptcy Code, any Person that solicits acceptances or rejections of the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP

/s/ Michael C. Markham
Michael C. Markham (FBN:  768560)
401 E. Jackson Street, Ste. 3100
Tampa, FL  33601-1100
Phone:  727-480-5118
Email:  mikem@jpfirm.com
Attorneys for Debtor

9061599_1