UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

IN RE:

SENIOR CARE LIVING VII, LLC,                    CASE NO. 8:22-bk-00103-CED
                                                Chapter 11

　　　　Debtor.

_____/

## DEBTOR'S MOTION FOR STRUCTURED DISMISSAL

The Debtor, Senior Care Living VII, LLC, by and through its undersigned attorneys, hereby moves this Court to enter a final order dismissing this case on certain terms and conditions set forth herein, and states as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. Sections 157 and 1334.  The subject matter of the Motion is a core proceeding pursuant to 28 U.S.C. Section 157(b).  Venue is proper in this district pursuant to 28 U.S.C. Section 1408.

2.      The statutory predicates for the relief requested herein are 11 U.S.C. §1112 and Rule 1017 of the Federal Rules of Bankruptcy Procedure.

### Background

3.      On January 10, 2022 (the "Petition Date"), the Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

4.      The Debtor owned an assisted living facility ("ALF") in Lewisville, Texas, that was operated by its management company, Validus Senior Living ("Validus").  The Debtor also owned

an approximate 4-acre parcel of unimproved real estate adjacent to the ALF (the "Excess Real Estate").

5.      Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor has operated as a Debtor-in-Possession and managed its ALF through Validus.

6.      An Official Committee of Unsecured Creditors has not been appointed as of the filing of this Motion.  In fact, there are only four remaining creditors with allowed claims in this case – UMB Bank, N.A. (the "Bond Trustee"), Baxter Construction Co. (Claim nos. 6 and 7), Direct Supply (Claim no. 1) and TK Elevator Corp. (Claim no. 2).

7.      The Bond Trustee serves as successor bond trustee and successor master trustee for the Senior Housing Revenue Bonds (Inspired Living at Lewisville Project) Series 2016 (the "Bonds"), which were issued in 2016 in the aggregate principal amount of $45,385,000 for the benefit of the Debtor. As security for the Debtor's obligations owing on the Bonds, the Bond Trustee holds a valid, first priority security interest in substantially all of the Debtor's assets.  The Bonds were further secured by, *inter alia*, that certain Guaranty Agreement executed by the Debtor's principal, Mark Bouldin ("Bouldin"), dated as of November 1, 2016. The Bond Trustee timely filed a proof of claim (Claim No. 4) for the total amount outstanding on the Bonds, *i.e.* $54,060,936.15, which is comprised of $45,385,000 in outstanding principal and $8,675,936.15 in outstanding interest.

8.      During this case, the Debtor sought and obtained authority to employ SC&H Capital, as financial advisor, to assist the Debtor, among other things, in procuring alternative financing for the Debtor.  Unfortunately, the Debtor was unable to obtain the necessary debtor-in-possession financing to effectuate an earlier negotiated settlement with the Bond Trustee.

2

9.      Subsequently, the Debtor reopened settlement discussions with the Bond Trustee and was able to reach an agreement that provided for, among other things, a sale of substantially all of the Debtor's assets.  In August 2022, the Debtor filed a series of motions in furtherance of the agreement reached with the Bond Trustee (Doc. Nos. 174, 175, 177), including a motion to approve bid procedures for the sale of the Debtor's assets.

10.     The Court entered an order approving the bid procedures (Doc. No. 187), but the Debtor's original motion to approve compromise (Doc. 175) was never granted.  In the meantime, the Debtor fully complied with the terms of the proposed settlement and the Court approved sales of the assets (Doc. Nos. 250, 251 – the "Sale Orders").  The approved sales were closed and the sales proceeds were placed into a special DIP account pursuant to the Sale Orders.

11.     On August 9, 2023, the Bond Trustee filed a Motion for Entry of Order Authorizing the Distribution of Sale Proceeds (Doc. No. 372 – the "Distribution Motion").  The Distribution Motion has been granted and an Order granting the Distribution Motion was entered on September 11, 2023 (Doc. 382).

12.     On September 15, 2023, the Debtor filed an Amended Plan (Doc. 386).  On September 29, 2023, the Debtor filed its Second Amended Plan (Doc. 395 – the "Plan).  On the same day, the Debtor filed its Second Amended Motion to Approve Compromise with the Bond Trustee (Doc. 397 – the "Compromise Motion").  The Plan and the Compromise Motion contemplated that Bouldin would pay $200,000 to the Bond Trustee for a release and that the Bond Trustee would pledge those funds for a distribution to unsecured creditors under a confirmed plan.  Otherwise, the compromise contemplates that the funds are given to the Bond Trustee.

13.     On November 7, 2023, this Court entered an Order approving the Compromise Motion (Doc. 412).  However, the Plan was not confirmed at that time.

14.    In the meantime, Bouldin and the Debtor have complied with the terms of the Compromise, including payment of the $200,000 into the trust account of Debtor's counsel and amendment of the Schedules (Doc. 414, 420).

15.    The Plan proposes a surrender of all remaining collateral to the Bond Trustee on account of its allowed secured claim and a pro rata distribution of the $200,000 to unsecured creditors.  A spreadsheet showing the proposed distribution is attached hereto as **Exhibit A**.[1]

16.    The Plan has not been confirmed as votes on the Plan have not been properly solicited from the Bondholders.  The Debtor has been advised that proper solicitation of the Plan on the Bondholders must be accomplished via a balloting agent at a cost of approximately $10,000. The Debtor anticipates that the Bondholders would vote in favor of the Plan in Class 1 (Bond Trustee – Secured) and Class 2 (Unsecureds) as a majority of the Bondholders already approved the compromise that has been approved by the Court (and contains the terms of the Plan).  In that event, the Debtor believes that the Plan would be confirmed.

17.    However, completing the confirmation process comes with the costs of a balloting agent and additional administrative expenses. It is also anticipated that certain parties will likely object to the Plan, and, thus, parties will be required to incur the additional costs of a contested confirmation hearing. As an alternative,[2] the Debtor proposes a structured dismissal of this case with the exact same outcome – surrender of the Bond Trustee's collateral and a pro rata distribution of the $200,000 – at likely reduced costs and expenses for all parties as compared to a plan process and confirmation hearing.  The Debtor is certainly aware of issues relating to structured dismissals.

---

[1] The Claim Amount for the Bond Trustee is an amount set forth in the Compromise Motion (Doc. 397, p. 5).  The other amounts are from the Claims Register.

[2] The Debtor is simultaneously filing a motion to approve plan solicitation, voting and tabulation procedures for the bondholders.  Such motion will be rendered moot if this Motion is granted.

However, the proposed structured dismissal in this case does not violate the priority rules in the Bankruptcy Code in any way.

## ARGUMENT

### A.    Legal Standard Governing Requests for Dismissal Under Section 1112

1.    Section 1112(b) of the Bankruptcy Code provides that, absent certain exceptions,

> On request of a party in interest, and after notice and a hearing, the court **shall** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause[.]

11 U.S.C. § 1112(b)(1) (**emphasis added**).  Thus, pursuant to the plain language of the statute, "a determination under § 1112(b)(1) requires a two-step analysis." *EPR Marine Welding Construction Services, Inc. v. Naval Services of Puerto Rico, Inc. (In re EPR Marine Welding Construction Services, Inc.)*, BAP No. PR 13-055, 2014 WL 3805447, at *6 (1st Cir. BAP July 31, 2014).  "First, the bankruptcy court must determine whether cause exists to convert or dismiss the chapter 11 proceeding; and second, if cause exists, the court must consider which option is in the best interests of creditors and the estate."  *Id.* (internal citation omitted); *see also In re L&R Development & Investment Corp.*, BAP No. PR 19-044, 2020 WL 1862377, at * (1st Cir. BAP Apr. 13, 2020) (quoting *Hoover v. Harrington (In re Hoover)*, 828 F.3d 5, 8 (1st Cir. 2016)) (same).

2.    "The initial burden is on the movant to prove there is cause for either conversion or dismissal of the chapter 11 case." *Andover Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC)*, 553 B.R. 162, 170 (1st Cir. BAP 2016) (citing *Efron v. Candelario (In re Efron)*, 529 B.R. 396, 411 (1st Cir. BAP 2015)).  "Once the movant establishes cause, the burden shifts to the opposing party to demonstrate 'unusual circumstances' establishing that conversion

or dismissal is not in the best interests of the creditors and the estate, and that it meets the other requirements of § 1112(b)(2)." *Id*.

3.      "If no such unusual circumstances exist and/or the other requirements are not met, the bankruptcy court *must* convert or dismiss the case." *Id* (*emphasis in original*); *see also Samuels v. Wilmington Savings Fund Society, FSB (In re Samuels)*, BAP No. 19-003, 2019 WL 6211209, at *5 (1st Cir. BAP Nov. 19, 2019) ("[A]fter a finding of cause, the court's discretion is limited; it must grant some form of relief unless § 1112(b)(2) applies.") (internal quotation omitted).

**B.      "Cause" Exists to Dismiss These Chapter 11 Cases Under 11 U.S.C. § 1112(b)(4)**

4.      "Section 1112(b)(4) provides a non-exhaustive list of 'causes' for conversion or dismissal." *In re Pittsfield Weaving Co.*, 393 B.R. 271, 274 (Bankr. D.N.H. 2008); *see also Samuels*, 2019 WL 6211209, at *5.  The enumerated examples of "cause" under section 1112(b)(4), however, are merely illustrative rather than exhaustive, and, thus, a bankruptcy court "may consider other factors . . . as they arise and use its powers to reach appropriate results in individual cases." *In re Colbran, LLC*, 475 B.R. 289, (Bankr. D. Mass. 2012) (quoting *In re Gonic Realty Trust*, 909 F.2d 624, 626 (1st Cir. 1990)); *see also Samuels*, 2019 WL 6211209, at *5 ("The bankruptcy court has broad discretion in determining what constitutes 'cause' adequate for dismissal under § 1112(b).").  "However, one ground is sufficient, standing alone, to establish cause under the statute." *Samuels*, 2019 WL 6211209, at *6 (internal quotations and brackets omitted); *see also Hoover*, 828 F.2d at 9 ("one cause is enough").

5.      Here, cause exists under section 1112(b)(4)(A) to dismiss the above-captioned bankruptcy case (the "Bankruptcy Case") because the Debtor is not generating any revenue and there is no business for the Debtor to rehabilitate.  Pursuant to the Sale Orders, the Debtor sold all of its business operations and assets, and, since then, has not engaged in any business activities

other than those related to the wind down of the Bankruptcy Case. The Debtor is not producing any revenue and does not have the ability to do so. In short, the Debtor is merely a shell waiting to dissolve.

6.      Cause also exists because a chapter 11 plan is not warranted or feasible in the Bankruptcy Case. *See* 11 U.S.C. § 1112(b)(4)(J) (cause exists if a debtor fails "to file or confirm a plan" within the timeframe specified by the Bankruptcy Code or by order of the court); *see also In re Pittsfield Weaving Co.*, 393 B.R. 271, 274 (Bankr. D. N.H. 2008) (finding cause under section 1112(b) where, among other things, the debtor, "despite being in bankruptcy for nearly two years," had not shown a confirmable plan); *In re 3 Ram, Inc.*, 343 B.R. 113, 117–18 (Bankr. E.D.Pa., 2006) ("While no longer an enumerated ground under amended § 1112, conversion or dismissal of a Chapter 11 bankruptcy case is appropriate where the court finds that the proposed plan is not feasible and that a feasible plan is not possible.") (internal citations omitted). The Debtor liquidated substantially all of its assets under the Sale Orders and no longer conducts business. Post-closing, the Debtor's estate exists solely to effectuate an orderly exit from the Bankruptcy Case. While doing so, the Debtor's estate continues to accrue administrative fees for professionals and the U.S. Trustee. There is no longer a business to reorganize or assets to distribute and, thus, there is no reason to pursue a plan of reorganization or liquidation and incur the related costs and expenses.

7.      In light of the foregoing, cause exists for the Court to dismiss the Bankruptcy Case.

**C.      Dismissal of the Bankruptcy Case is in the Best Interests of the Debtor's Creditors and its Estate**

8.      Once a bankruptcy court determines that cause exists to dismiss a chapter 11 bankruptcy case, it must determine whether dismissal is in the best interests of the debtor's

creditors and estate. *See Andover Covered Bridge*, 553 B.R. at 177. "This decision is committed to the discretion of the bankruptcy court." *Id.* (citing *Hoover*, 828 F.3d at 11).

       9.    "Although the Bankruptcy Code does not define the phrase 'best interests of the creditors and the estate,' courts have typically considered the following factors to determine whether dismissal or conversion is in the best interest:

> (1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal, (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted, (3) whether the debtor would simply file a further case upon dismissal, (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors, (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise, (6) whether any remaining issues would be better resolved outside the bankruptcy forum, (7) whether the estate consists of a "single asset," (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests, (9) whether a plan has been confirmed and whether any property remains in the estate to be administered, and (10), whether the appointment of a trustee is desirable to supervise the estate and address possible environment and safety concerns.

*Andover Covered Bridge*, 553 at 177-78 (internal quotation omitted). "In essence, the court should evaluate and choose the alternative that would be most advantageous to the parties and the estate as a whole." *Id*.

      10.    Here, dismissal is undoubtedly in the best interests of the Debtor's creditors and estate. Dismissal will maximize the value of the Debtor's estate because the alternative—conversion to a chapter 7 liquidation and appointment of a trustee—is (a) unnecessary and would provide no benefit to creditors, and (b) would impose significant additional administrative costs upon the Debtor's estate that would only deplete the remaining cash. All of the Debtor's assets and business operations were sold; the Debtor has no causes of action under chapter 5 of the Bankruptcy Code; the Bond Trustee's rights to the remaining assets are undisputed; and unsecured creditors will be paid a *pro rata* dividend from a fixed pot of money. Consequently, there are no

assets to be administered by a chapter 7 trustee.  Therefore, the appointment of a chapter 7 trustee would not benefit the Debtor's creditors or estate.

11.     The distribution scheme proposed in this motion exactly matches the distribution priorities under the Bankruptcy Code and complies with the absolute priority rule. The Bond Trustee will receive its remaining collateral and all allowed unsecured claims will receive a *pro rata* portion of the $200,000. Equity holders will not receive anything on account of their equity interests. There are no other claims against the Debtor and its estate. As a result, creditors would not receive greater recoveries in a chapter 7 liquidation.

12.     For the reasons stated herein, the Debtor submits that a dismissal pursuant to section 1112 of the Bankruptcy Code is in the best interests of the Debtor's creditors and its estate.

**D.     The Proposed Distribution Scheme Complies with Applicable Law**

13.     The distribution to creditors proposed in this motion comply with the absolute priority rule and, as such, do not violate the United States Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973 (2017).

14.     Recognizing that structured dismissals are "increasingly common," *id* at 979, the Supreme Court in *Jevic* held that "[a] distribution scheme ordered in connection with the dismissal of a Chapter 11 case cannot, without the consent of the affected parties, deviate from the basic priority rules that apply under the primary mechanisms the Code establishes for final distributions of estate value in business bankruptcies." *Id* at 978.   In other words, *Jevic* stands for the proposition that a debtor may not use a dismissal as a means to distribute assets to a favored class of "low-priority general unsecured creditors" while "skipping" a disfavored class that would otherwise be entitled to priority of payment under a plan." *Id.*

15.     Here, no class of claims will receive any payment or other item of value unless all classes having higher priority are paid in full or are otherwise consent to such treatment. Although general unsecured claims are not being paid in full, no distributions of any nature will be made to any person or entity having an equity interest in the Debtor. Thus, the proposed plan of distribution is in full compliance with the priority scheme of the Bankruptcy Code.

16.     As noted by the U.S. Bankruptcy Court for the Southern District of New York in *In re KG Winddown, LLC*, 628 B.R. 739 (Bankr. S.D.N.Y. 2021), the ruling in *Jevic* does not prohibit courts from granting a request for a structured dismissal if the proposed distribution scheme complies with the priority scheme of the Bankruptcy Code. Specifically, the court held that:

> The Supreme Court in *Jevic* imposed limits on structured dismissals, but the court left the door open where such dismissals do not violate the absolute priority rule and otherwise comply with the applicable provisions of the Bankruptcy Code [citations omitted]. Here, the Debtors' request for structured dismissals fits neatly through that open door.

*KG Winddown*, 628 B.R. at 741.

17.     In light of the foregoing, the Debtor submits that the procedures and payments described in this motion do not violate the holding in *Jevic*.

**E.     All Prior Releases, Stipulations, Settlements, Rulings, Orders and Judgments Should Remain Binding and Should Continue to have Full Force and Effect**

18.     The Debtor requests that all prior orders, releases, stipulations, settlements, rulings, and judgments entered by the Court in the Bankruptcy Case (the "Prior Orders") remain in full force and effect and survive the entry of an order dismissing the Bankruptcy Case. Although section 349 of the Bankruptcy Code provides that dismissal will typically reinstate the prepetition state of affairs by re-vesting property in the debtor and vacating orders and judgments of the bankruptcy court, a bankruptcy judge may "for cause, orde[r] otherwise." 11 U.S.C. § 349(b). "[T]his provision appears designed to give courts the flexibility 'to make the appropriate orders to

protect rights acquired in reliance on the bankruptcy case.'" *Jevic*, 137 S.Ct. at 984 (internal citation omitted).

19.     Courts have regularly allowed orders, including those approving releases and settlements, to be given continued effect after a dismissal, notwithstanding section 349 of the Bankruptcy Code.  *See*, *e.g.*, *In re Al Liebers Golf Equipment, Inc., d/b/a The World of Golf*, Case No. 12-23698 (Bankr. S.D.N.Y. Aug. 28, 2013) (ECF No. 135) (providing that prior orders will remain in full force and effect and will survive dismissal); *In re Harvey Electronics, Inc.*, Case No. 07-14051 (Bankr. S.D.N.Y. Sep. 16, 2008) (providing that prior orders survive dismissal); *In re Sunco Liquidation, Inc.*, No. 17-10561 (Bankr. D. Del. Nov. 6, 2017) (ECF No. 865) (giving continued effect to orders entered throughout the pendency of the chapter 11 cases); *In re Old Towing Co.*, Case No. 17-10249 (Bankr. D. Del. May 30, 2017) (ECF No. 381) (giving continued effect to 363 sale order and any releases, injunctions and successor liability provisions provided for in such sale); *In re TAH Window, Inc.*, Case No. 16- 11599 (Bankr. D. Del. Jan. 13, 2017) (ECF No. 408) (giving orders, releases, and injunctions continuing effect); *In re City Sports, Inc.*, Case No. 15-12054 (KG) (Bankr. D. Del. Mar. 4, 2016) (ECF No. 647) (giving continued effect to previously entered orders).

20.     The Debtor submits that cause exists to allow all Prior Orders to be given continued effect.  Over the course of the Bankruptcy Case, the Debtor has sold substantially all of its assets and has relied on the Prior Orders to allow for an orderly and efficient transfer of its assets to the buyers and a wind down of this Bankruptcy Case. Unless the Court orders otherwise, section 349 of the Bankruptcy Code could unravel the effect of the Prior Orders, including, but not limited to, the Sale Orders and the Compromise Order. Moreover, numerous parties, including counter-parties to assumed executory contracts, have also reasonably relied on such Prior Orders.  By allowing

the Prior Orders to remain in full force and effect and survive dismissal, the Court will preserve the benefits of all parties' efforts, and achievements and expectations.

**F.      The Court Should Authorize, But Not Require, Dissolution of the Debtor**

21.      As noted, the Debtor has sold substantially all of its assets and ceased operations. Consequently, the Debtor intends for its corporate entity to be dissolved as soon as reasonably practicable upon the dismissal of the Bankruptcy Case.

22.      It is appropriate and necessary for the Court to authorize the dissolution of the Debtor. The Debtor has no further business to conduct and no other purpose in remaining active as corporate entities. The Debtor may incur additional taxes and statutory fees because of continued corporate existence absent prompt dissolution. Accordingly, it is in the best interests of the Debtor's estate for the Debtor to dissolve as soon as practicable following entry of an order approving this motion.

<u>**CONCLUSION**</u>

WHEREFORE, the Debtor respectfully requests that this Court enter an order approving the dismissal of this case on a structured basis as set forth herein, and providing such other and further relief as is just and proper.

JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP

/s/ Michael C. Markham
Michael C. Markham (FBN: 768560)
400 N. Ashley Drive, #3100
Tampa, FL 33602
Telephone:  813-225-2500
Email:  mikem@jpfirm.com
Attorneys for Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion has been served by U.S. mail on all creditors (see attached Matrix) and electronically on the CM/ECF participants (indicated on the attached Matrix with a "+" symbol) on this 5trh day of February, 2024.

/s/ Michael C. Markham
Michael C. Markham

9344556_1

**Exhibit A to Motion for Structured Dismissal**

| Creditor | Claim No. | Claim Amount | | % Total Claims | | Plan Payment |
|---|---|---|---|---|---|---|
| UMB Bank | 4 | $29,562,514 | | 0.907185897 | | $181,437.18 |
| Baxter Construction | 6 | $1,762,673 | | 0.054091208 | | $10,818.24 |
| Baxter Construction | 7 | $1,248,369 | | 0.038308743 | | $7,661.75 |
| Direct Supply | 1 | $9,244 | | 0.000283671 | | $56.73 |
| TK Elevator | 2 | $4,252 | | 0.000130481 | | $26.10 |
| **Totals** | | **$32,587,052** | | **1** | | **$200,000.00** |

Label Matrix for local noticing
113A-8
Case 8:22-bk-00103-CED
Middle District of Florida
Tampa
Mon Feb  5 09:42:48 EST 2024

Baxter Construction, Co.
GrayRobinson, P.A.
Steven J. Solomon, Esq.
333 SE 2nd Avenue, Suite 3200
Miami, FL 33131-2191

County of Denton, Texas
McCreary, Veselka, Bragg & Allen, PC
Julie Anne Parsons
PO Box 1269
Round Rock, TX 78680-1269

Matthew Huckin
Valhalla Real Estate
3605 Caruth Boulevard
Dallas, TX 75225-5102

Lewisville ISD
Linebarger Goggan Blair & Sampson, LLP
c/o Sherrel K Knighton
2777 N Stemmons Frwy Ste 1000
Dallas, TX 75207-2328

Kenneth W Mann
SC&H Group, Inc
6011 University Boulevard
Suite 490
Ellicott City, MD 21043-6107

Mary L. Peebles
232 S. Highland St., Ste. 102
Memphis, TN 38111-4529

Senior Care Living VII, LLC
3665 East Bay Drive, Ste. 204-429
Largo, FL 33771-1990

TARPON HUNTERS LLC
7200 N. Mopac Expressway, Suite 120
Austin, TX 78731-3058

A Place for Mom, Inc.
PO Box 913241
Denver, CO 80291-3155

ASSA Abloy Global Solutions
PO Box 676947
Dallas, TX 75267-6694

Accushield, LLC
Suite 360
2030 Powers Ferry Rd SE
Atlanta, GA 30339-5016

Airgas USA, LLC
PO Box 734672
Dallas, TX 75373-4672

Allegra
107 N Jefferson St
Tampa, FL 33602-5001

Aquarium Environments, Inc.
d/b/a Fish Gallery
2909 Fountainview Drive
Houston, TX 77057-6105

Aquarius Water Refining
PO Box 337
Wimauma, FL 33598-0337

Arrow Exterminators, Inc.
5750 Rufe Snow Drive
North Richland Hills, TX 76180-6163

Baxter Construction Company
3225 Avenue N
Fort Madison, IA 52627-3553

Baxter Construction, Co
c/o Steven J. Solomon, Esq.
GrayRobinson, P.A.
333 SE 2nd Avenue, Suite 3200
Miami, FL 33131-2191

Baxter Construction, Co.
c/o Ted C. Craig
333 SE 2nd Avenue, Suite 3200
Miami, FL 33131-2191

Best Celebrity Talent
Attn:  Rhonda Medina
700 Meadow Bend Court
Lewisville, TX 75077-8606

Bluestone Pools, LLC
PO Box 92923
Southlake, TX 76092-0923

Cawley Company
PO Box 2110
Manitowoc, WI 54221-2110

Commercial Safety Systems
PO Box 8499
Seminole, FL 33775-8499

Community Payroll
Suite 400
301 Anchor Plaza Parkway
Tampa, FL 33634

D. Park Smith
Law Office of D. Park Smith
250 Cherry Springs Road, Suite 200
HUNT, TX 78024-3010

Denton County Tax Collector
110 W Hickory Street
Denton, TX 76201-4168

Department of Revenue
PO Box 6668
Tallahassee FL 32314-6668

Direct Supply
PO Box 88201
Milwaukee, WI 53288-8201

Echo Lab
PO Box 70343
Chicago, IL 60673-0343

Eldermark Software
PO Box 844707
Boston, MA 02284-4707

FL Dep of Revenue
Collection Agency Section
5050 W Tennessee St.
Tallahassee, FL 32399-6586

G5 Search Marketing, Inc.
Dept LA 23988
Pasadena, CA 91185-0001


HD Supply Facilities Mtnce
PO Box 509058
San Diego, CA 92150-9058

HM LIfe Insurance Company
PO Box 382038
Pittsburgh, PA 15251-8038

Hunter-Kelsey of Texas, LLC
Dennis Leone
SHANKMAN LEONE, P.A.
707 North Franklin Street, 5th Fl
Tampa, FL 33602-4419


Hunter-Kelsey of Texas, LLC
c/o Howard Marc Spector
SPECTOR & COX, PLLC
12770 Coit Road, Suite 850
Dallas, Texas 75251-1364

Hunter-Kelsey of Texas, LLC as Agent and
Attorney-In-Fact for Tarpon Hunters, LLC
c/o Howard Marc Spector
Spector & Cox, PLLC
12770 Coit Road, Suite 850
Dallas, TX 75251-1364

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346


J. Robert Medlin
FTI Consulting
2001 Ross Avenue, Ste. 650
Dallas, TX 75201-2923

Julie Anne Parsons
McCreary, Veselka, Bragg & Allen, P.C.
P.O. Box 1269
Round Rock, TX 78680-1269

Julie Anne Parsons
McCreary, Veselka, Bragg & Allenj, PC
PO Box 1269
Round Rock, TX 78680-1269


Konica Minolta Business Solutions
Dept. 2366
PO Box 122366
Dallas, TX 75312-2366

Lewisville ISD
Linebarger Goggan Blair & Sampson, LLP
c/o John K. Turner
2777 N Stemmons Frwy Ste 1000
Dallas, Texas 75207-2328

Lewisville ISD
Linebarger Goggan Blair & Sampson, LLP
c/o Sherrel K Knighton
2777 N Stemmons Frwy Ste 1000
Dallas, Texas 75207-2328


Magnolia Fisheries
PO Box 3087
Coppell, TX 75019-7001

McKesson Medical-Surgical
PO Box 204786
Dallas, TX 75320-4786

Our Place Tuxedos & Uniforms
2044 Smith Street
North Providence, RI 02911-1785


Senior Care Living VI, LLC
6400 Oilfield Rd
Sugar Land, TX 77479-9622

Senior Living Specialists
14580 Berklee Drive
Addison, TX 75001-3532

Shred it
c/o Stericycle, Inc.
28883 Network Place
Chicago, IL 60673-1288


Silversphere, LLC
Suite 200
2570 W Int'l Speedway Blvd
Daytona Beach, FL 32114-8145

Sodexo, Inc & Affiliates
PO Box 360170
Pittsburgh, PA 15251-6170

(p)SONGS & SMILES
129 S MAIN ST STE 260
GRAPEVINE TX 76051-5488


TK Elevator Corp. fka ThyssenKrupp Elevator
c/o Law Office of D. Park Smith
250 Cherry Springs Road, Suite 200
HUNT, TX 78024-3010

TX Comptroller Public Accts
PO Box 13528, Capital Station
Austin, TX 78711-3528

Tarpon Hunters, LLC
7200 N. Mopac Expressway #120
Austin, TX 78731-3058


The County of Denton, Texas
Julie Anne Parsons
McCreary, Veselka, Bragg & Allen, PC
PO Box 1269
Round Rock, TX 78680-1269

The County of Denton, Texas
c/o Julie Anne Parsons, Attorney
McCreary, Veselka, Bragg & Allen, PC
PO Box 1269
Round Rock, TX 78680-1269

Thyssenkrupp Elevator Corp
PO Box 3796
Carol Stream, IL 60132-3796

UMB Bank, NA Master Trustee
120 S. Street #1400
Minneapolis, MN 55402

US Foods, Inc.
PO Box 843202
Dallas, TX 75284-3202

VSL HOldings, LLC
Suite 400
4301 Anchor Plaza Parkway
Tampa, FL 33634-7529


Validus Senior Living REIT
Suite 400
4301 Anchor Plaza Parkwy
Tampa, FL 33634-7529

Welcome Home Software, Inc.
2829 Normandy Drive NW
Atlanta, GA 30305-2824

Michael C Markham +
Johnson Pope Bokor Ruppel & Burns, LLP
400 N. Ashley Drive
Suite 3100
Tampa, FL 33602-4337


Benjamin E. Lambers +
Timberlake Annex
501 E. Polk Street, Suite 1200
Tampa, FL 33602-3945

Steven J Solomon +
GrayRobinson, PA
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131-2191

United States Trustee - TPA +
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602-3949


Ryan C Reinert +
Shutts & Bowen LLP
4301 W Boy Scout Blvd, Ste 300
Tampa, FL 33607-5716

Dennis D Leone +
Shankman Leone PA
707 N. Franklin Street, 5th Floor
Tampa, FL 33602-4419

Daniel S Bleck +
Mintz Levin
One Financial Center
Boston, MA 02111-2657


Howard Marc Spector +
Spector & Cox, PLLC
12770 Coit Road, Suite 850
Dallas, TX 75251-1364

Sherrel K Knighton +
Linebarger Goggan Blair & Sampson, LLP
2777 N Stemmons Freeway, Suite 1000
Dallas, TX 75207-2328

Timothy J McKeon +
Mintz Levin
One Financial Center
Boston, MA 02111-2657


Dallas Taylor +
Mintz, Levin, Cohn, Ferris, Glovsky and
919 Third Avenue
New York, NY 10022-3902

Julie Anne Parsons +
McCreary Veselka Bragg & Allen PC
PO Box 1269
Round Rock, TX 78680-1269

John Kendrick Turner +
Linebarger Goggan Blair & Sampson, LLP
2777 N. Stemmons Freeway
Suite 1000
Dallas, TX 75207-2328


Tyler Greenwood +
Chamberlain Hrdlicka
1200 Smith St
Suite 1400
Houston, TX 77002-4496

Ted Craig +
GrayRobinson, P.A.
333 S.E. 2nd Avenue
Ste 3200
Miami, FL 33131-2191

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Songs & Smiles
Suite 260
129 S Main Street
Grapevine, TX 76051


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Brimmer Burek & Keelan, LLP

(u)Caryl E. Delano
Tampa

(u)Hunter-Kelsey of Texas LLC


(u)MPH Partners, LLC

(u)RBC Capital Markets, LLC, and Meridian Cap

(u)UMB Bank, N.A.


(d)Baxter Construction Company
3225 Avenue N
Fort Madison, IA 52627-3553

(u)MPH Partners, LLC
c/o Lynn Welter Sherman, Esq.
Withdrawn 5/22/2023 (doc #334)

End of Label Matrix
Mailable recipients    80
Bypassed recipients     8
Total                  88